**Estanislado SALAZAR, Jr., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 26–82C.

United States Claims Court.

May 2, 1984.

Steven M. Angel, Oklahoma City, Okl., for plaintiff.

Peter M. Lancaster, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

## OPINION

WIESE, Judge:

Plaintiff is a former civilian employee of the United States Air Force who was removed from his position as a machine tool operator because of repeated instances of unauthorized absence. In this suit, he seeks review of a decision of the Federal Employee Appeals Authority (FEAA) sustaining his removal. The principal question is whether, as plaintiff contends, the FEAA was wrong, as a matter of law, in holding (by necessary implication) that an absence occasioned by an on-the-job injury does not relieve the affected employee from complying with regulations requiring the timely request of sick leave.

This case comes before the court on the Government's motion for summary judgment. The Government seeks either dismissal of the action on grounds of laches, or, alternatively, affirmance of the FEAA decision. Having considered the briefs and oral argument of counsel, the court determines that the FEAA decision is correct and therefore grants the Government's motion.

*Facts*

Plaintiff, Estanislado Salazar, was formerly employed as a machine tool operator at Kelly Air Force Base in San Antonio, Texas. On March 24, 1977, his employing agency advised him that he was to be suspended without pay for a period of 15 days as penalty for an unauthorized two-day work absence—the third such infraction of work rules on his part in less than a year.

Later that same day, plaintiff suffered an on-the-job injury. He informed his immediate supervisor who referred him to the base medical facilities for treatment. The supervisor told him that if he (plaintiff) did not return to work that day, then "I'll carry you on sick leave for today and the next day". As required by applicable regulation, a report of the accident, a so-called CA–1 Form was prepared on March 25, 1977.

Plaintiff did not return to work on the day of his injury or on the following day, respectively, March 24th and March 25th. These two days of authorized leave, taken together with the 15-day suspension period that was scheduled to begin the following Monday (*i.e.*, March 28th) marked April 12th as the date by which the agency expected his return. Plaintiff, however, did not report to his duty station until April 18th—nearly a week later than anticipated by the agency. This later return had been without prior agency authorization or approval; indeed, according to the agency's testimony on the point, there had been no communication of any sort from the plaintiff throughout the period of his absence.

Although plaintiff cited his medical condition as the *reason for his failure to have* reported to work by April 12, the agency saw his late return as yet another instance of his disregard for the appropriate leave procedures. Applicable regulations required an employee to obtain the supervisor's approval in advance of a contemplated absence, or, in the case of illness, to promptly notify superiors of the need for sick leave. The details of the regulations covering these points having been spelled out to plaintiff on numerous past occasions—all seemingly to no avail—the agency therefore determined that, for the sake of the efficiency of its operations, plaintiff's removal from Air Force employment had become a necessity.

Plaintiff was given notice of the agency's proposal to remove him in a letter of May 20, 1977. By way of explanation for the action being taken, the letter cited plaintiff's unauthorized absence from work on April 12 through April 15, 1977, his prior infractions of the same sort and the progression of penalties these incidents had entailed, and, finally, the fact that he had been given specific, written warning as late as March 24, 1977 that "any future offense of *any nature may result in a Proposed Notice to separate you from Air Force employment by Removal.*" (Underscoring original.)

Plaintiff pursued his right to review the documentary record supporting the removal action and to reply orally and in writing to the charges upon which the action was based. Nevertheless, on June 16, 1977, the agency issued its decision to remove him effective July 8, 1977.

An appeal to the Federal Employee Appeals Authority (*i.e.*, Civil Service Commission) followed. A hearing was held on November 3, 1977 and a decision affirming the removal was issued by that body on December 21, 1977.

The thrust of plaintiff's case before the FEAA was that ample efforts had been made in his behalf to contact management officials in order to inform them that the on-the-job injury would preclude his returning to work on April 12, 1977. However, the evidence on that point did not persuade the FEAA; hence, it ruled:

> We find that [neither] the verbal and/or telephone conversations of the appellant's representatives with supervisors, nor the April 7, 1977 statement of Dr. Hernandez, which was presented to the agency on or about April 18, 1977 * * * constitute sufficient information to cause the agency to disregard the reporting procedures set forth in paragraph 10a(2) [pertaining to unscheduled annual leave] and 19a [pertaining to unscheduled sick leave] of AFR 40–630.

The gist of the FEAA's decision was that plaintiff had not timely communicated the need for this continued absence after April 11, 1977; in short, he had failed to abide by the requirements of regulation.

On the basis of the total evidence of record, the FEAA concluded:

As the appellant has received progressively more severe disciplinary action for his failure to meet time and attendance requirements, and since the appellant's removal constituted the fourth offense of a similar nature, we must conclude that the appellant's removal was for such cause as will promote the efficiency of the service.

Accordingly, the removal was affirmed. The decision went on to advise plaintiff that it was a final decision, that he had no further rights of appeal and that the decision "marks the exhaustion of those administrative remedies which must precede resort to the courts."

Plaintiff sought discretionary review before the Appeals Review Board of the Civil Service Commission; this relief was denied on August 10, 1979. Additionally, while the application for review was pending (and again later, after that review had been denied) plaintiff unsuccessfully processed an employment discrimination complaint before the agency with an appeal therefrom to the Equal Opportunity Employment Commission. The last such appeal was rejected in April 1981; suit was commenced in this court in January 1982.

Initially the case came before the court for argument in April 1983 and, at that time, it was determined that additional facts would be required before the matter could be intelligently ruled upon. Accordingly, by order entered April 19, 1983, the court denied defendant's motion for summary judgment (without prejudice to later renewal), granted a then-stayed request for discovery and directed the parties to provide the court with answers to specific questions not answered by their briefs. These efforts have since been completed, and, on the basis thereof, the Government has renewed its motion for summary judgment. Having previously ruled against the Government on the question of laches and finding no change in circumstances that would warrant a different result now,[1] we therefore reaffirm that earlier result and go on here to address the merits of the controversy.

## Discussion

As has been stated, plaintiff's case before the FEAA was to the effect that he had given the Air Force timely notice that his job-related injury precluded a return to work on April 12, 1977. The evidence offered in support of this argument consisted, in the main, of conversations between plaintiff's union representative and management personnel regarding the right to continuation of pay as contemplated under 5 U.S.C. § 8118 (1982)[2] for the period of his convalescence.

---

1. In the order which the court entered in this case on April 19, 1983, it ruled—on the laches question—that plaintiff had unreasonably delayed in the commencement of his suit in this court. However, the delay was not then seen as occasioning any prejudice to the Government because (i) no specific employee rehiring had followed in consequence of plaintiff's removal from his position; therefore the Government would not be in the position of paying two employees for the work of one, (ii) plaintiff had secured employment in the civilian sector immediately following his removal; consequently, any back pay award to which he might have been found entitled would be offset by the amount of his civilian sector earnings, and (iii) disposition of the case did not appear to require any supplementation of the record with oral testimony; hence, the risks of inaccuracy of recall that might attend testimony concerning events long past was not an evidentiary concern. On the basis of these facts, the court's order noted: "Accordingly, since the mere passage of time alone would not be a legally sufficient basis upon which to sustain the defense of laches, *Adkins v. United States,* Ct.Cl. No. 420–80C, order at 4–5 (September 29, 1981); *Brundage v. United States,* 205 Ct.Cl. 502, 509, 504 F.2d 1382, 1386 (1974), *cert. denied,* 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975), the court denies that part of the Government's motion without prejudice to its later reassertion in case of a change in circumstances."

2. Under the referenced section, 5 U.S.C. § 8118 (1982), an employee who sustains a traumatic injury that prevents his reporting to duty may file a claim for a period of wage loss with his immediate supervisor and thereby obtain a continuation of his regular pay for a period not to exceed 45 days. If upon later review, the claim is disallowed (say, on the ground that the injury was determined not to have been job-related), then payments made to the employee are recovered through charge-backs to sick or annual leave or are treated as overpayments of pay

The FEAA found this evidence insufficient to support the claim of timely notice of absence for two reasons: (i) the possibility of there being a delay in plaintiff's return by April 12th was never specifically discussed; (ii) that delay could not be inferred from the timing of the conversations for they took place roughly the "first week in April". In short, only the vaguest of implications (if that much) could substantiate the notion that a discussion of pay continuance was tantamount to indicating an absence from work beyond April 11, 1977.

It is essentially this same argument, though now in more sophisticated dress, that plaintiff presses here. Specifically, the contention is that the occurrence of a disabling on-the-job injury triggers a statutory compensation scheme whose administrative details subsume both agency notice and approval of an employee's necessary absence from work. This mechanism—plaintiff maintains—supersedes the general requirements regarding leave administration and, in particular here, the requirement that civilian personnel of the Air Force request sick leave for unanticipated absences "as soon as possible after the beginning of the absence * * *." Air Force Regulation (AFR) 40–630, ¶ 19a (1971).

The argument is developed chiefly through the regulations pertaining to the Federal Employees' Compensation Act, 5 U.S.C. §§ 8101–8193, which were in effect at the time of plaintiff's injury. Among these are 20 C.F.R. § 10.207 and § 10.209 (1977) which direct, *inter alia*, the preparation of a written report whenever an employee sustains a traumatic, disabling injury in the performance of duty. This report (previously identified herein as the CA–1 Form) consists of two parts—the "Federal Employees' Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation" which the employee (or someone acting in his behalf) is obliged to complete

within two working days following the injury and the "Official Superior's Report of Traumatic Injury" which the employee's superior is required to complete and forward within two working days of its receipt from the employee.

The regulations specify that, where the injury is disabling, the employee's superior shall "[a]dvise the employee of the right to elect continuation of regular pay or use annual or sick leave". 20 C.F.R. § 10.-207(a)(3) (1977). Correspondingly, they charge the employee with the responsibility of indicating his choice among the indicated alternatives: "[i]t must be shown on the [CA–1] form whether the employee wishes to receive sick or annual leave * * * or request continuation of regular pay for the period of disability." 20 C.F.R. § 10.209(a) (1977).

It is this up-front attention to the employee's designation of either sick leave, annual leave or statutory continuation of regular pay that is of importance in plaintiff's argument. The way plaintiff sees it, that designation does more than simply identify the accounting scheme to which the employee would have his wage income charged during a period of injury-caused absence.

As plaintiff envisions it, such an election also serves to notify the agency of the circumstances which force the employee's absence from work and, further, necessarily implies the agency's approval of, or at least acquiescence in, that absence. From this reasoning, plaintiff concludes that the Air Force's insistence that he comply with ordinary leave procedures was an unwarranted infringement of his right to be compensated during an absence caused by an on-the-job injury as prescribed in the CA–1 Form and accompanying regulations.

▆ On the face of it, the argument seems persuasive. But it stumbles on the facts. The sticking point is that the CA–1

---

requiring recapture adjustments. Conversely, in lieu of continuation of pay, an employee may elect from the outset to charge the period of his absence to sick or annual leave and, if his claim

is later approved, then "buy back" the leave and have it recredited to his account. A Government affidavit explains that this latter course is the more frequently followed.

Form that was initially prepared on March 25th (there was a second form prepared at a later date) failed to note any choice between the alternatives that might have been checked, namely, "Sick and/or annual leave" or "Continuation of regular pay not to exceed 45 days and compensation for wage loss if disability for work continues beyond 45 days * * *." The form, in other words, recorded only the fact of an on-the-job injury, and not that that injury was so disabling as to necessitate the employee's absence from work. In light of this fact, it is clear that the argument plaintiff has made here addresses a hypothetical situation rather than the actual circumstances of his case.

Nor would it help matters much to insist, as plaintiff does, that the CA–1 Form had been prepared in its entirety by plaintiff's supervisor rather than jointly, as the regulations require. Even if that were true (the evidence is inconclusive on the point) it would only serve to underscore the fact that the Government did not have the information at hand precisely because there had been no timely communication from plaintiff.

■ And it is this last mentioned point which goes to the heart of the matter. The regulations bearing upon leave administration obligate the civilian employee of the Air Force to request sick leave "for absence because of * * * injury * * * or other circumstances of incapacity which are not known in advance * * * as soon as possible after the beginning of the absence * * *." AFR 40–630 ¶ 19a (1971). Plaintiff was aware of this regulation and, as of March 25, 1977, he could not reasonably have assumed its inapplicability to the circumstances that he then found himself in. That is to say, as of the mentioned date, plaintiff knew that no more than two days of sick leave had been officially authorized (*i.e.,* March 24th and March 25th), he knew that the CA–1 Form which he had signed anticipated no disability-related absence subsequent to March 25th, and, finally, he knew, as early as April 7, 1977, that his attending physician thought him unfit to return to work for at least another two weeks. It was therefore plain—or so it should have been—that his absence would extend beyond the expiration of his suspension period and, so far as the agency could then have known, beyond the date by which it expected his return. On the facts as they are—as opposed to those posited in plaintiff's argument—plaintiff had an obligation to request sick leave for the post-suspension period absence. Such was the board's implicit holding and its decision on the point is therefore correct.

■ Plaintiff makes the argument that even if his absence did initially amount to an infraction of leave regulations, nevertheless no disciplinary consequences should have followed from it because the agency subsequently determined his injury merited a continuation of pay for the full period of his absence. To put it another way, since the injury he sustained was held to be chargeable to the agency's account rather than his own (meaning here that it was work-related and not willfully caused), he was therefore as much entitled to retroactive approval of the absence that it entailed as he was to the continuation of his pay for the period of that absence.

■ The court does not accept this argument. The fact that the Government ultimately found plaintiff's injury to be job-related and granted compensation accordingly, does not imply, much less require, that it also excuse an infraction of leave rules associated with that injury. The Government's managerial need for timely notice of an employee's absence is no less a concern where the absence is caused by an on-the-job injury than where it is not. Plaintiff had more than ample time in which to inform his supervisor that his absence would continue beyond the expected return-to-work date. Having failed to honor that notice requirement on three prior occasions, his removal for a fourth infraction was well within the agency's prerogative.

## CONCLUSION

For the reasons stated, the Government's motion for summary judgment is granted. Plaintiff's petition is to be dismissed.