Dolores Hammarstrom **DEAN**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 230–83C.

United States Claims Court.

Aug. 11, 1986.

John A. Everhard, Falls Church, Va., for plaintiff.

Mary Mitchelson, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

MOODY R. TIDWELL, III, Judge:

This is a military pay case which comes before this court on Cross-Motions for Summary Judgment. The question presented is whether the Air Force Board for the Correction of Military Records properly determined that plaintiff was not entitled to recover survivor annuity bene-

fits under the Survivor Benefit Plan. 10 U.S.C. §§ 1447–1455 (1982). The court concludes that the Board's determinations were erroneous and that plaintiff is entitled to judgment as a matter of law.

## FACTS

Plaintiff, Ms. Dolores Hammarstrom Dean, is the widow of Air Force Colonel John F. Nealon. The Nealons were married on February 28, 1971, in Helev, Denmark. This marriage continued until the time of Colonel Nealon's death on March 13, 1979.[1]

On August 6, 1973, Colonel Nealon executed Department of Defense form 1883 indicating his election not to participate in the Survivor Benefit Plan (the plan). Under the plan, the monthly retired pay of a participating retired servicemember is reduced by an amount determined prior to retirement. This predetermined sum goes to fund an annuity paid to the surviving spouse and dependent children upon the servicemember's death. Participation in the plan is automatic for servicemembers who are married or have dependent children at the time they become eligible for retired pay, unless such servicemember elects not to participate in the plan before the first day for which he becomes eligible for retirement pay. 10 U.S.C. § 1448(a) (1982). Should a servicemember elect not to participate in the plan at the maximum level, that person's spouse is required by the statute to be notified of such election.[2] The regulation implementing the statute requires that the notification to the spouse be made in writing.[3]

On October 1, 1973, Colonel Nealon entered into retired status. Some four and one-half years later, on March 13, 1979, Colonel Nealon suffered a fatal heart attack while undergoing medical treatment at Malcolm Grow United States Air Force Medical Center. Plaintiff applied to the Air Force for survivor benefits under the plan, but was informed of Colonel Nealon's election-out of the plan. Subsequently, on March 29, 1983, plaintiff applied to the Air Force Board for the Correction of Military Records (the Board) seeking correction of Colonel Nealon's military records to reflect her entitlement to full survivor annuity benefits. Plaintiff alleged that she had received no notification from the Air Force as to Colonel Nealon's decision and that, therefore, her husband's election not to participate in the plan was ineffective.

Without waiting for the Board to make its decision, plaintiff also sought relief in this court by filing a Complaint on April 8, 1983. The action in this court was suspended until January 1985, when the Board rendered a decision denying plaintiff's application for relief. Subsequently plaintiff filed an Amended Complaint in this court and shortly thereafter the parties filed Cross-Motions for Summary Judgment.

## DISCUSSION

The gravamen of plaintiff's position before this court is that Colonel Nealon's attempt to elect-out of the plan was improperly effected because she was never notified of her husband's election. Plaintiff maintains that the plan provides for

---

1. At the time of her marriage to Colonel Nealon, plaintiff was the widow of Arthur Frederick Hammarstrom, Jr., United States Army, who died in Vietnam on July 24, 1965. On July 10, 1979, following Colonel Nealon's death, plaintiff obtained a decree from the Circuit Court of Fairfax County, Virginia restoring to her the surname of Hammarstrom. Subsequently, on January 14, 1984, she married Allan M. Dean.

2. 10 U.S.C. § 1448(a)(3)(A) (1982) provides in pertinent part: "If a person ... who is married elects not to participate in the Plan at the maximum level ... that person's spouse shall be notified of that election."

3. Air Force Regulation 211–24, ¶ 7 (5 June 1975), provides:

When a member, with an eligible spouse, elects less than full participation and coverage under the plan, the PA counselor so advises the spouse in writing, using the letter format of attachment 1. Notification of the spouse when required is accomplished within 48 hours of the counseling session by regular mail for both CONUS and outside the CONUS addresses.... A copy of the letter should be filed with the member's DD Form 1883 by the PA counselor.

automatic coverage of the spouse unless the servicemember elects not to participate and that notice to the spouse of such an election is statutorily required. Accordingly, plaintiff contends that failure to give notice invalidates the election and restores full coverage under the plan. Plaintiff cites the legislative history of the plan and *Barber v. United States,* 230 Ct.Cl. 287, 676 F.2d 651 (1982), to support this result.

Defendant contends that the Air Force did not violate the notice requirement of section 1448(a) and that this court lacks jurisdiction in this matter because plaintiff has not predicated her claim on a statute which provides for a money judgment. Defendant maintains that the United States Court of Claims incorrectly decided *Barber v. United States,* 230 Ct.Cl. 287, 676 F.2d 651 (1982), and that it should not be followed as precedent by this court. In support of its position defendant directs the court's attention to proposed amendments to the Survivor Benefit Plan.[4] Defendant further contends that plaintiff's claim is barred by laches and that the decision of the Board was not arbitrary, capricious, or unsupported by substantial evidence.

## I. *Jurisdiction*

■ At the outset, the court will address defendant's assertion that this court lacks jurisdiction because if defendant is correct the court will be without authority to resolve the remaining issues. This court's jurisdictional statute, 28 U.S.C. § 1491 (1982), has been construed to limit its jurisdiction to suits in which a plaintiff asserts a substantive right enforceable against the United States for money damages. *United States v. Testan,* 424 U.S. 392, 397–98, 96 S.Ct. 948, 952–53, 47 L.Ed.2d 114 (1976); *United States v. King,* 395 U.S. 1, 2–3, 89

S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). This is accomplished if the claimant relies upon a particular statutory provision which grants, either expressly or by implication, "a right to be paid a certain sum." *Eastport Steamship Co. v. United States,* 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967).

■ Defendant challenges the present action on the ground that 10 U.S.C. § 1448(a) (1982), the statute relied upon by plaintiff, does not command the payment of money to her under the circumstances alleged in her Complaint. However, after carefully reviewing the history and purpose of the Survivor Benefit Plan the court agrees with the United States Court of Claims' decision in *Barber v. United States,* 230 Ct.Cl. 287, 676 F.2d 651 (1982), that a violation of section 1448(a) can be fairly said to give rise to a claim for money damages.[5]

The articulated purpose of the plan was to establish a system of survivor benefits for the survivors of military retirees.[6] This system was intended to correct an anomaly in the otherwise comprehensive military benefits program which left survivors of retired military personnel without any source of income if a retired servicemember died from non-service connected causes.[7] Under the statutory scheme, the rights of these survivors are protected through compulsory participation in the plan by each person entitled to retired pay, unless that person affirmatively chooses not to participate. 10 U.S.C. § 1448(a) (1982). The payment of a monthly annuity to the beneficiary or beneficiaries of each participant is provided in section 1450. Placed in this perspective, this court agrees with the United States Court of Claims holding in *Barber v. United States,* 230

---

4. The court notes that these amendments have subsequently been enacted. 10 U.S.C. §§ 1447–1455, as amended by Pub.L.No. 99–145, § 721, 99 Stat. 676 (1985).

5. The court notes that *Barber* was decided on April 7, 1982 by Chief Judge Friedman, Judge Kunzig and Judge Bennett and that nine days later, on April 16, 1982, Judges Davis, Nichols and Smith reconfirmed *Barber* on this jurisdictional issue when they held in *Trone v. United*

*States,* 230 Ct.Cl. 904 (1982), that claims instituted under the Survivor Benefit Plan can give rise to a claim for money damages. *Id.* at 907.

6. S.Rep. No. 92–1089, 92d Cong., 2d Sess. 2 (1972), *reprinted in* (1972) U.S. Code Cong. & Ad. News 3288, 3289.

7. 117 Cong.Rec. 37188–89 (1971) (remarks of Rep. Fish).

Ct.Cl. 287, 676 F.2d 651 (1982), when the court concluded:

> Quite clearly, failure to pay these monthly annuities would give rise to a claim in this court since the claimant would be suing for money improperly withheld; a cause of action arising from one of the two classes of claims encompassed by section 1491 of title 28 U.S.C.; *Eastport S.S. Co.*, 178 Ct.Cl. at 605, 372 F.2d at 1007.
> ... In sum, we interpret sections 1448–1450 as creating a substantive right mandating compensation for damage sustained.

*Id.* at 291–92, 676 F.2d at 654.

■ Defendant contends that this court is not bound by the *Barber* decision, but should reexamine this issue in light of the subsequent amendments to the Survivor Benefit Plan. Defendant further contends that the well-recognized exception to the doctrine of *stare decisis* is that prior precedent must yield to a change in the controlling law or regulation.[8] However, in the court's view, the 1985 amendments to the Survivor Benefit Plan only add support to the United States Court of Claims decision in *Barber v. United States*, 230 Ct.Cl. 287, 676 F.2d 651 (1982). Defendant would have this court read *Barber* as having established jurisdiction on the basis that the plan's statutory framework requires consent of a servicemember's spouse before a servicemember's election-out of the plan

could be effective. Defendant contends that the determination in *Barber* was based on the presumption that had plaintiff been notified, she would have successfully persuaded her husband to change his decision to opt-out of the plan. Thus, defendant argues that because Congress only grants such consent powers expressly, and the Survivor Benefits statute does not do so, Congress did not intend that the spouse have such powers. In the court's view, defendant's analysis of the *Barber* decision is in error.

The heart of *Barber v. United States*, 230 Ct.Cl. 287, 676 F.2d 651 (1982), is a thorough analysis of the legislative history of the Survivor Benefit Plan. The court noted that the committee report accompanying this legislation made it very clear that Congress intended to prevent a serviceman's wife from learning for the first time that she was left without support at her husband's death, by providing her with notice, 10 U.S.C. § 1448(a) (1982), and with the opportunity to participate in the counseling, 10 U.S.C. § 1455(1) (1982), that was to precede a decision to elect-out of the plan. The court in *Barber v. United States*, 230 Ct.Cl. 287, 676 F.2d 651 (1982), cited the following excerpt from the committee report:

> The rights in retirement pay accrue to the retiree and, ultimately, the decision is his as to whether or not to leave part of that retirement pay as an annuity to his

---

8. To the extent that defendant is suggesting that this court is not bound by decisions of the United States Court of Claims when there has not been a subsequent change in the law, defendant is in error. On October 28, 1982, the United States Court of Appeals for the Federal Circuit rendered a decision in *South Corp. v. United States*, 690 F.2d 1368 (Fed.Cir.1982), as its first published Opinion following the establishment of that court on October 1, 1982. At the beginning of its Opinion, the court stated:

> The court sits en banc to consider what case law, if any, may appropriately serve as established precedent. We hold that the holdings of our predecessor courts, the United States Court of Claims and the United States Court of Customs and Patent Appeals, announced by those courts before the close of business September 30, 1982, shall be binding precedent in this court.

*Id.* at 1369.

Furthermore, on October 7, 1982, Chief Judge Alex Kozinski of the United States Claims Court issued United States Claims Court General Order No. 1, *reprinted in* 1 Cl.Ct. at XXI (1982), which reads, in pertinent part, as follows:

> (1) All published decisions of the United States Court of Claims are accepted as binding precedent for the United States Claims Court, unless and until modified by decisions of the United States Court of Appeals for the Federal Circuit or the United States Supreme Court.

Accordingly, this court and the United States Court of Appeals for the Federal Circuit are bound to the decisions of the United States Court of Claims until modified by decisions of the United States Court of Appeals for the Federal Circuit or the United States Supreme Court.

survivors. However, the Committee wants every effort made to be sure that the advantage is not lost through neglect or lack of understanding and that the spouse fully understands the election may profoundly affect her future welfare. H.R.Rep. No. 92–481, 92d Cong., 1st Sess. at 8–9.

*Id.* at 296, 676 F.2d at 657.

The United States Court of Claims recognized that it was Congress' intent that the spouse be both notified and counseled in order that she be made "fully aware" of the implications of her husband's decision and to "apprise" her of the election and its impact on her future welfare. *Id.* at 297–98, 676 F.2d at 658. However, nothing in the text of *Barber* will support defendant's contention that the court premised its finding of jurisdiction upon the presumption that the spouse had a mandatory consent right or the power to veto a servicemember's election-out of the plan. Rather, addressing the issue of jurisdiction, the *Barber* court simply held that wrongful failure to pay survivor's benefits "would give rise to a claim in this court since the claimant would be suing for money improperly withheld...." *Id.* at 291, 767 F.2d at 654.[9]

Based on the foregoing, this court concurs with the holding in *Barber* on the issue of jurisdiction and concludes that this court has jurisdiction over plaintiff's claim because the statute setting out the provisions of the plan create a substantive right mandating compensation for damages sustained. Having concluded that this matter is within this court's jurisdiction, the court will now consider the other issues.

## II. *Laches*

■ Initially, plaintiff contends that because the issue of laches was not affirmatively raised in defendant's Answer, defendant has waived the right to raise laches as a defense now for the first time. Plaintiff relies on Rule 8(c) of this court to support its proposition. Originally, the court was predisposed to deny defendant the right to raise the defense of laches at this late date. However, in light of the liberal policy of the Federal Rules of Civil Procedure, upon which this court's rules are based, to allow amendments to the pleadings at almost any stage of the proceedings,[10] the court will entertain defendant's laches defense.

■ Laches is a "fairness" doctrine by which relief is denied to one who has unreasonably and inexcusably delayed the assertion of a claim, resulting in injury or prejudice to the adverse party. *Brundage v. United States,* 205 Ct.Cl. 502, 505, 504 F.2d 1382, 1384 (1974), *cert. denied,* 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975). The doctrine of laches is based upon considerations of public policy which require the discouragement of stale claims. *Id.* "It recognizes the need for speedy vindication or enforcement of rights, so that courts may arrive at safe conclusions as to the truth." *Id.* at 505–06, 504 F.2d 1384. In order to be successful in barring plaintiff's action based on the doctrine of laches, defendant must show (1) that plaintiff unreasonably delayed in asserting her cause of action and (2) that plaintiff's delay resulted in prejudice to defendant. *Conner v. United States,* 10 Cl.Ct. 110 (1986).

### A. *Unreasonable Delay*

At the outset, the court notes that plaintiff's claim arose on March 13, 1979, the date Colonel Nealon died. (*See Warren v. United States,* 4 Cl.Ct. 552, 556, *aff'd.* 746 F.2d 1489 (Fed.Cir.1984), holding that a claim by a surviving spouse for survivor benefits accrued at the latest when her

---

**9.** The court finds it persuasive that Congress made no attempt in its 1985 amendments to the Survivor Benefit Plan to change the United States Court of Claims' interpretation of the notification requirement in section 1448(a) as articulated in *Barber v. United States,* 230 Ct.Cl. 287, 676 F.2d 651 (1982).

**10.** Affirmative defenses, even though not appearing on the face of the Complaint, may be established upon a motion to dismiss or for summary judgment. *See e.g., Suckow Borax Mines Consolidated, Inc. v. Borax Consolidated, Ltd.,* 185 F.2d 196, 205 (9th Cir.1950), *cert. denied,* 340 U.S. 943, 71 S.Ct. 506, 95 L.Ed. 680 (1950).

husband died.) However, plaintiff did not file the instant action until April 8, 1983, more than four years later.

Plaintiff contends that her delay in bringing this action was neither unreasonable nor unjustified because (1) she was under considerable emotional strain due to her husband's death and was confronted with a "seemingly endless maze of 'red tape' which had to be contended with," (2) she was faced with personal health problems to which she gave first priority, and (3) she was not aware of her claim until after the *Barber* decision because defendant allegedly had failed to fulfill its responsibility to counsel and notify her of Colonel Nealon's election out of the plan as required by statute.

■ Plaintiff's first and second justifications for her delay are without merit. The fact that plaintiff was under considerable emotional strain due to her husband's death and was faced with personal health problems does not, at least in the eyes of the law, excuse or justify her waiting for approximately four years after her cause of action accrued before filing a Complaint in this court. Plaintiff cites no authority to support the proposition that her delay should be justified or excused on these grounds. Furthermore, these reasons do not rise to the level of a legal disability which may excuse her delay, *Gerber v. United States*, 2 Cl.Ct. 311, 317 (1983), nor do they manifest the sort of condition which would prevent her from comprehending her legal rights. *Goewey v. United States*, 222 Ct.Cl. 104, 114, 612 F.2d 539, 545 (1979).

■ Plaintiff's third justification for delay is also without merit because plaintiff's ignorance of her possibility to recover is insufficient to excuse her delay. Plaintiff was bound to know the statutory requirements surrounding the Survivor Benefit Plan and to take appropriate action to ascertain whether they had been satisfied. *Foster v. United States*, 3 Cl.Ct. 440, 444 (1983), *aff'd*, 733 F.2d 88 (Fed.Cir.1984). Moreover, plaintiff does not allege that defendant concealed anything from her which

would inhibit her in ascertaining her cause of action. *See Willcox v. United States*, 3 Cl.Ct. 83 (1983), *aff'd*. 769 F.2d 743 (Fed. Cir.1985).

Based on the foregoing, the court concludes that plaintiff did not pursue her claim diligently and that her excuses, either separately or collectively, are not sufficient justification for her delay.

### B. *Prejudice*

■ To be successful in barring plaintiff's action based on the doctrine of laches, defendant must also show that plaintiff's delay resulted in prejudice to defendant. *Conner v. United States*, 10 Cl.Ct. 110 (1986); *Brundage v. United States*, 205 Ct.Cl. 502, 509, 504 F.2d 1382, 1386 (1974), *cert. denied*, 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975). In *Bevelheimer v. United States*, 4 Cl.Ct. 558 (1984), this court noted that there are two kinds of prejudice that will support a defense of laches: (1) the loss of evidence which would support defendant's position, or (2) a change in position by defendant that would not have occurred, except for plaintiff's delay. *Id.* at 563.

Defendant does not contend that it has changed its position in a way that would not have occurred except for plaintiff's delay. However, defendant does assert that as a result of plaintiff's delay, it has lost evidence that would support its position. Defendant's brief in support of its Cross-Motion for Summary Judgment states this contention as follows:

> Since the most critical piece of documentary evidence, the 1973 spousal notification letter to plaintiff, was destroyed pursuant to Air Force records destruction policy, defendant must rely almost exclusively on the testimony of its officers and employees. It is inevitable that their memories will have faded over the intervening decade. This is particularly true when the events they are being asked to recall are not inherently significant but rather part of their daily office routine.... The 'routine chore' in the

instant case is the mailing of a letter. As is to be expected, the individual who had that responsibility no longer remembers mailing that specific letter to plaintiff.[11]

It is true that much of this dispute would be moot if defendant could now produce a copy of the 1973 spousal notification letter it allegedly sent to plaintiff. However, defendant's loss of this "critical piece" of evidence should not be attributed to plaintiff. Rather, it was defendant's own short-sighted and ill-conceived regulation under which that document was prematurely but officially destroyed that precludes defendant from having that critical piece of evidence available to support its position. Colonel Nealon died nearly six years after he elected out of the plan. Consequently, even if plaintiff had initiated this suit immediately after Colonel Nealon's demise, potential witnesses would still be required to recall events that had transpired nearly six years earlier.

Moreover, if the mailing of a letter is as inherently insignificant as defendant asserts, the officer involved could not be expected to have had any better recall in 1979 than when plaintiff filed this suit. It is undoubtedly true that the officer's recollection of routine events that took place in 1973 had already faded from view by the time the notification letter was destroyed, much less by the time Colonel Nealon died. Thus, it is unlikely that the officer lost any significant recollection between the sixth and tenth years after the notification letter was allegedly sent, which is the period of plaintiff's delay. Furthermore, defendant's concern sounds hollow in light of its own delay of two years from the time plaintiff filed this action to the time defendant obtained a declaration from the individual who witnessed Colonel Nealon's election.

The importance of the incremental delay between the sixth and tenth years is fur-ther diminished by the observation in *Barber v. United States*, 230 Ct.Cl. 287, 676 F.2d 651 (1982), that "in view of the lapse of time involved (over 4½ years) it is not remarkable that [the notifying officer] would have no present recollection of having sent the notice." *Id.* at 299, 676 F.2d at 659. The same could be said of the notifying officer in the instant case four and one-half years after he supposedly mailed plaintiff's notification letter. For precisely these reasons, the regulation which authorized the destruction of the spousal notification letter should not be applied in any way to the detriment of plaintiff's case.

Defendant further contends that if this court were to sustain the *Barber* decision and decide that the Air Force's inability to produce the spousal notification letters for the period from 1972 to 1979 defeats its defense, defendant will suffer great prejudice because there are approximately 228,-014 members of the Navy, Air Force and Marine Corps who have retired and elected less than full annuities under the plan for their spouses between October 1, 1972, the effective date of the plan, and January 1, 1979, the year in which the Air Force began permanently keeping the spousal notification letters. Defendant contends that this could result in a $2.632 billion liability. Defendant's argument is without merit because the "floodgates," if opened, were opened by *Barber v. United States*, 230 Ct.Cl. 287, 676 F.2d 651 (1982) and *Trone v. United States*, 230 Ct.Cl. 904 (1982). As this court stated in *Trone v. United States*, 3 Cl.Ct. 690 (1983): "This must come as a great relief to plaintiff and those similarly situated. Spouses of retired military personnel will now receive full survivor's annuities if not notified of the spouses' election of less than full benefits under the Survivor's Benefit Plan." *Id.* at 693.

---

11. From 1972 to 1977 copies of spousal notification letters were destroyed after six months. A.R. 138, Rule 17. From July 18, 1977 through August 13, 1979, copies of these letters were destroyed after two years. A.R. 139–40, Rule

15. The court notes with satisfaction that this regulation has been modified since August 13, 1979, to preserve such important documents permanently in the retiree's finance records. A.R. 133.

Based on the foregoing, the court holds that defendant has failed to establish that it was prejudiced due to plaintiff's delay. Thus, defendant has failed to successfully invoke the defense of laches to bar plaintiff's claim.

### III. *Notice*

■ By affidavit, plaintiff contends that she received no notice of Colonel Nealon's decision to forego participation in the plan. Defendant maintains that notice was given pursuant to section 1448(a) and, thus, no violation of that statute occurred. Defendant supports its position with the declaration of former Master Sergeant James E. Porter, executed on May 30, 1985. Accordingly, the court is faced with conflicting testimony as to whether notice was actually given. Because summary judgment cannot be granted where there exists a dispute as to a genuine issue of material fact, *Gernand v. United States*, 174 Ct.Cl. 936, 939 (1966), the court must carefully examine the evidence.

Under circumstances identical to those of the present case, the Court of Claims in *Barber v. United States*, 230 Ct.Cl. 287, 676 F.2d 651 (1982) held that when a plaintiff states by affidavit that it did not receive the statutory notice required under sections 1448 and 1455 and defendant's witness merely states that it was "normal procedure" to send such notice, summary judgment for plaintiff cannot be defeated by defendant's general "normal procedure" statement. *Id.* at 300. As in *Barber v. United States*, 230 Ct.Cl. 287, 676 F.2d 651 (1982), Mr. Porter's statement regarding his "normal procedure" of properly notifying the interested spouse, even if taken as true, "does not controvert plaintiff's affidavit." *Id.* Rule 56(e) of this court requires specific facts showing that there is a genuine issue for trial. Defendant in this case has not produced the specific facts necessary. Instead, the court is asked to take Mr. Porter's general statement and to infer that notice was given because public officers are presumed to discharge their duties correctly.

Defendant claims that the Board was correct in favoring this general presumption over plaintiff's affidavit, arguing that the presumption in this case can only be overcome by "well-nigh irrefragable proof." In support of its position, defendant cites *Loftin v. United States*, 6 Cl.Ct. 596, 608 (1984), *aff'd*, 765 F.2d 1117 (Fed. Cir.1985); *Carrier Corp. v. United States*, 6 Cl.Ct. 169, 176 n. 2 (1984); *American General Leasing, Inc. v. United States*, 218 Ct.Cl. 367, 374, 587 F.2d 54, 59 (1978); and *Knotts v. United States*, 128 Ct.Cl. 489, 492, 121 F.Supp. 630, 631 (1954).

However, a careful reading of these cases does not bear out the suggested strength of the presumption that defendant contends. In only one of these cases, *i.e.*, *Knotts v. United States*, 128 Ct.Cl. 489, 121 F.Supp. 630 (1954), did the party opposing the presumption present any evidence to support its opposition. Regarding presumptions of fact, such as the one in the instant case, the United States Court of Appeals for the Federal Circuit recently stated that the effect of such a presumption "is to place upon the opposing party the burden of establishing the nonexistence of that fact. The burden on the opposing party, however, is limited to *production* of evidence. The burden of *persuasion* on the existence of the presumed fact remains throughout on the party invoking the presumption." *Panduit Corp. v. All States Plastic Manufacturing Co.*, 744 F.2d 1564, 1579 (1984). Thus, defendant continues to bear the ultimate burden. Furthermore, the Court of Appeals for the Federal Circuit continued: "A presumption does not enjoy the status of evidence. If a finding on the evidence is made that a presumed fact has been effectively rebutted, the presumed fact ceases to exist. It does not linger on to be weighed against the evidence." *Id.* This rule of law affirms the conclusion arrived at in *Barber* when the United States Court of Claims held that the officer's general statement alone was "insufficient to create a true conflict of fact such as would forestall summary judgment." *Id.* 230 Ct.Cl. at 300, 676 F.2d at 659.

This court agrees with the analysis of the United States Court of Claims in *Barber* and finds it applicable in the instant case. Although a presumption for defendant may have existed, plaintiff's presumption-defeating affidavit has not been controverted by defendant. Accordingly, this court holds that plaintiff has effectively rebutted defendant's presumption that the appropriate notice was sent to plaintiff so that the presumption has ceased to exist. Mr. Porter's general "normal procedure" statement alone is insufficient to controvert plaintiff's affidavit regarding non-receipt of notice.

## IV. *The Board's Decision*

In arriving at its decision, the Board concluded that plaintiff had failed to present sufficient evidence to prove her case. The Board distinguished *Barber* on the grounds that it was decided on "a narrow set of facts" not present in the instant case. First, the Board noted that the deposition of the government's only witness, a Mr. Russell, contradicted his own affidavit. Second, the Board noted that the government apparently did not have a copy of the notice letter even before it was supposed to be destroyed. The Board then invoked the presumption that public officers do their duty properly and stated: "We are not convinced that applicant's memory after such a lengthy period of time should be given more reliance than the regulatory procedure."

■ This court may overturn a decision of the Board when it is unsupported by substantial evidence or when there is non-compliance with applicable laws and regulations. *Jordan v. United States,* 205 Ct.Cl. 65, 72–73 (1974). It is the view of this court that neither of the factual differences used by the Board to distinguish *Barber* from the instant case, either singularly or collectively, significantly influenced any part of the *Barber* court's holding.

First, the Board mischaracterized the *Barber* decision with regard to the contradiction between Mr. Russell's affidavit and his deposition. The *Barber* court noted that Mr. Russell in his affidavit claimed to recall sending notice to Ms. Barber, but later admitted in his deposition that he did not have a specific recollection, but rather relied upon the argument that it was his usual procedure to notify the affected spouses and, therefore, he must have done so in that instance. The Board's identification of this contradiction as a factual distinction between the two cases implies that the Board thought witness unreliability was a determinative factor in *Barber.* However, the court in *Barber* made no such inference, rather it mentioned the contradiction to help explain the Board's ruling against plaintiff. Indeed, the Board did not have the benefit of Mr. Russell's deposition in reaching its conclusion. Thus, the *Barber* court knew that Mr. Russell's testimony was limited to a statement of general practice, but the Board did not. *Barber,* 230 Ct.Cl. at 299, 676 F.2d at 659. In the present case, Mr. Porter similarly lacks a specific recollection and asserts the same general practice. Thus, this fact is a point of similarity between the cases rather than a reason to distinguish them.

Second, the inability of the government to show Ms. Barber a copy of the spousal letter was only mentioned in *Barber* after the court had found for plaintiff and stated the holding in the case. Indeed, the details of the event were relegated to a footnote. The event was simply used by the court to emphasize the weakness of defendant's position.

## CONCLUSION

■ The court concludes that the decision of the Court of Claims in *Barber* is fully controlling on the issue of jurisdiction and that defendant failed to establish it was prejudiced due to plaintiff's delay thus barring defendant from raising laches as a defense. Moreover, the court concludes that there is substantial evidence to support the conclusion that plaintiff was not given the notice required by law and that the decision of the Board is unsupported by substantial evidence.

The court holds that plaintiff is entitled to coverage under the Survivor Benefit Plan and to appropriate survivor benefits from the date of Colonel Nealon's death on March 13, 1979, until such time as she is no longer eligible therefor. The court further holds that to the accrued total benefits to which plaintiff is presently entitled there shall be offset that amount actually paid to Colonel Nealon during the period of his retirement that would otherwise have been deducted from his retirement pay as his contribution to the plan.

Plaintiff is also entitled to have her late husband's military records corrected to reflect plaintiff's coverage under the plan in a manner that would be consistent with this Opinion. Defendant is to calculate the total amount due and render payment to plaintiff within 45 days from the date of this Opinion, or to report to the court why it has been unable to do so.

Accordingly, Plaintiff's Motion for Summary Judgment is granted. Defendant's Cross-Motion for Summary Judgment is denied. Costs to plaintiff.

IT IS SO ORDERED.