*1050
 
 BENNETT, Senior Circuit Judge.
 

 In these consolidated appeals the government seeks reversal of the judgments of the United States Claims Court in
 
 McCarthy v. United States,
 
 10 Cl.Ct. 573 (1986), and
 
 Kelly v. United States,
 
 10 Cl.Ct. 579 (1986), which held that plaintiffs-appellees were entitled to summary judgments as a matter of law, allowing them to recover survivor annuity benefits under the Surviv- or Benefit Plan, 10 U.S.C. §§ 1447-1455 (1982). We affirm both judgments of the Claims Court.
 

 BACKGROUND
 

 Ms. McCarthy and Ms. Kelly, the surviving spouses of retired Air Force members, were denied annuities provided to surviving spouses and dependents of deceased service members who qualify under the Survivor Benefit Plan (SBP), 10 U.S.C. §§ 1447-1455 (1982). It is an undisputed fact that appellees’ respective husbands elected not to provide them with survivor annuities. Ms. Kelly and Ms. McCarthy applied to the Air Force. Board for the Correction of Military Records (AFBCMR) seeking to have their deceased husbands’ military records changed to reflect that those elections were ineffective due to a failure to give the spouses notice of their husbands’ elections, as required by 10 U.S.C. § 1448(a). In both cases, the AFBCMR denied the application for relief. However, the Claims Court (Tidwell, J.) reversed, holding that the Air Force had failed to comply with the requirement of 10 U.S.C. § 1448(a)(3)(A) to give appellees notice of their husbands’ elections and that this failure entitled them to the annuities.
 
 McCarthy v. United States,
 
 10 Cl.Ct. 573 (1986);
 
 Kelly v. United States,
 
 10 Cl.Ct. 579 (1986).
 
 [1]
 

 Under the SBP the retired pay of a participating retired service member is reduced by a sum which goes to fund an annuity paid to a surviving spouse and dependent children upon the service member’s death. Participation in the plan is automatic for those with spouses or dependent children when the service member becomes eligible for retired pay unless the member elects not to participate in the plan before retirement is effective. Should such service member elect not to participate in the plan at the maximum level, 10 U.S.C. § 1448(a)(3)(A) requires that the member’s spouse “shall be notified of that election.” Regulations then mandate that the notice shall be in writing and that the spouse” be counseled within 48 hours as to the effects of the election. AFR 211-24 U 7 (5 June 1975). The spouse, however, at the times here relevant, had no veto over or power to withhold consent from any election made by the service member.
 

 In the cases now before the court, the surviving widows gave sworn affidavits that they did not receive the notice required by the statute. The Air Force was unable to disprove this by producing copies of the notices it alleged were sent. Pursuant to official policy from 1972 to 1977, copies of spousal notification letters were routinely destroyed by the Air Force after 6 months. We are advised that this shortsighted policy was later changed, but it was not until 1979 that the notification letters were made a permanent part of a service retiree’s financial records.
 

 Technical Sergeant Richard Kelly made his election not to provide an annuity under the SBP on July 28, 1976, and he subsequently died on October 4, 1980. The Air Force produced no evidence to contradict the sworn affidavit of Ms. Kelly that she had not received notice of her husband’s election. Colonel William Edmond McCarthy made his election on October 16, 1972, and he died on October 14, 1981. In the case of Ms. McCarthy an officer testified for the Air Force before the AFBCMR that the regular procedure was to send the notice but he had no recollection of the McCarthy case. The AFBCMR held that
 
 *1051
 
 the presumption of regularity in procedures by Air Force officials in the execution of their assigned duties had not been overcome in either case. The Claims Court rejected this finding as unsupported by substantial evidence, concluding that the unrebutted affidavits overcame any general presumption of regularity in the notice procedures. These appeals followed.
 

 OPINION
 

 The parties agree that two issues must be decided: (1) whether the Claims Court correctly held that the claimants were entitled to survivor annuities because the Air Force did not provide them with the notices required by statute and (2) whether the factual finding of the AFBCMR that appel-lees did receive notice was properly overturned by the Claims Court.
 

 Answering the foregoing questions in the negative, appellant argues that the Claims Court had no Tucker Act jurisdiction because the SBP confers upon surviving spouses no substantive right to recover money damages from the United States as a result of the alleged failure of the Air Force to notify them of their husbands’ decisions to elect out of the SBP. Further, it is contended that the finding of the AFBCMR should not have been overturned in any event because of the presumption of regularity in Air Force procedures to make proper notification.
 

 All of the issues now raised have been previously addressed in earlier cases decided by our predecessor court,
 
 Barber v. United States,
 
 230 Ct.Cl. 287, 676 F.2d 651 (1982) and
 
 Trone v. United States,
 
 230 Ct.Cl. 904 (1982), which reaffirmed the result in Barber.
 
 [2]
 
 Appellant urges that these cases were wrongly decided and should be reversed. However, its suggestion that the court reconsider and reverse them in banc was denied by the active judges of the court prior to oral argument in the present appeals. This panel remains, therefore, bound by those precedents.
 
 South Corporation v. United States,
 
 690 F.2d 1368 (Fed.Cir.1982). We have entertained the appellant’s arguments, however, because of the vigor with which they have been advanced and because we consider it appropriate to reexamine the challenged precedents in the context of the present appeals which present the issues directly to the Federal Circuit for the first time. Having done so with considerable care, we explicitly reaffirm
 
 Barber
 
 and
 
 Trone,
 
 for reasons which follow.
 

 As the Court of Claims observed in
 
 Trone,
 
 “[t]he heart of the
 
 Barber
 
 opinion is a thorough analysis of the legislative history of the plan.” 230 Ct.Cl. at 907. We do not deem it necessary to repeat all of what was said in
 
 Barber,
 
 the principal precedent on which we rely. It is a published opinion and familiarity with it is presumed for the purposes of this discussion.
 

 Appellant insists that the Claims Court had no jurisdiction here because the statute establishing the SBP did not provide for money damages for its violation by the government. It is now axiomatic that Tucker Act jurisdiction, 28 U.S.C. § 1491 (1982), has been construed to be limited to substantive claims for money.
 
 United States v. Testan,
 
 424 U.S. 392, 397-98, 96 S.Ct. 948, 952-53, 47 L.Ed.2d 114 (1976). This is accomplished if the claimant relies upon a particular statutory provision which grants, either expressly or by implication, “a right to be paid a certain sum.”
 
 Eastport Steamship Corporation v. United States,
 
 178 Ct.Cl. 599, 372 F.2d 1002, 1007 (1967). “It is now settled that the Tucker Act does not itself confer a substantive right of recovery; rather, the prospective claimant must invoke substantive rights grounded expressly or by implication in a contract, an act of Congress or a regulation of an executive department.”
 
 United States v. Connolly,
 
 716 F.2d 882, 885 (Fed.Cir.1983), cer
 
 t. denied,
 
 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).
 

 The legislative history as outlined in
 
 Barber
 
 makes it clear that Congress intended to prevent a serviceman’s wife from learning for the first time that she was left
 
 *1052
 
 without support at her husband’s death, by guaranteeing her by law the right to notice and the opportunity for counseling before any election out by the service member would be effective. Failure to follow these procedures would by clear implication give rise to a substantive right to money improperly withheld because, as noted above, participation in the SBP was automatic, absent an affirmative election out of it and proper notification to the spouse. As held in
 
 Barber,
 
 failure to pay an automatic annuity under the SBP, absent such a valid election out by the service member, gives rise to a claim within the jurisdiction of the Claims Court for money improperly withheld. 676 F.2d at 654.
 

 “Under Section 1491 what one must always ask is whether the constitutional clause or the legislation which the claimant cites can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.”
 
 Eastport Steamship Corporation,
 
 372 F.2d at 1009. The test is met here beyond reasonable doubt. Therefore, in the circumstances of the present cases, we conclude that jurisdiction rests with the Claims Court, as it did earlier with the Court of Claims.
 
 See Barber,
 
 676 F.2d at 654 & n. 6.
 

 The court in
 
 Barber
 
 “came to the conclusion that the plan’s history demonstrates ‘that Congress intended that an election out of the plan would not be binding unless the statutory notice requirement was satisfied.’ ”
 
 Trone,
 
 230 Ct.Cl. at 907 (quoting
 
 Barber,
 
 676 F.2d at 657). Appellant argues that
 
 Barber
 
 and the two cases now on appeal held that the SBP vested the service member’s spouse, through the notice requirement, with veto power over the service member’s decision to elect out of the SBP. Appellant seeks to buttress this mistaken argument by reference to a 1985 amendment to the SBP which provided that an annuity may not thereafter be withheld from the spouse without that person’s consent. 10 U.S.C. § 1448(a)(3)(A) (Supp.III 1985). However, the 1985 amendment did not codify the holding of
 
 Barber
 
 because that case did not hold spousal concurrence was required.
 

 In 1972 and 1976, when the elections here were made, valid notice to the spouse did not guarantee the ability to change or alter the serviceman’s decision about non-participation in the plan and the contrary has not been suggested by this or any other court.
 
 Barber
 
 addressed only the effect of the failure to provide notice to a spouse upon a service member’s election not to provide an annuity to the spouse. Congress did nothing to change
 
 Barber’s
 
 interpretation that failure to give notice would invalidate the election out and make automatic the award of a survivor annuity. Actually, the 1985 enactment reiterated in 10 U.S.C. § 1448(a)(6)(C) the earlier notice requirement and did so without in any way altering the judicial interpretation of it in
 
 Barber.
 
 This is rather persuasive that Congress found no fault with that decision.
 
 See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,
 
 456 U.S. 353, 382 n. 66, 102 S.Ct. 1825, 1841, n. 66, 72 L.Ed.2d 182 (1982) (“Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change”);
 
 see also Dean,
 
 10 Cl.Ct. at 568 n. 9.
 

 By invalidating the Kelly and McCarthy elections in the present cases, the Claims Court was not providing veto power over the elections to spouses or even requiring spousal consent under the law as it existed prior to 1985. Rather, by failing to provide the required spousal notice, it was the Air Force’s violation of 10 U.S.C. § 1448(a)(3)(A) (1982), and of its own regulation, that nullified the elections to opt out of the plan because Congress intended that an election out would be void unless the statutory notice requirement was satisfied. If the notice requirement is to mean anything and be enforceable this result must obtain.
 
 Barber,
 
 676 F.2d at 658.
 

 The terms of the statute are inextricably related. To ignore the notice provision, as appellant would have us do, would be to say that Congress wrote a meaningless provision into the law.
 
 Barber,
 
 676 F.2d at 658. We will not attribute such incompetence to Congress. Statutes and regulations must be construed to avoid absurd
 
 *1053
 
 and whimsical results, unrelated to congressional purpose.
 
 Church of the Holy Trinity v. United States,
 
 143 U.S. 457, 460, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892);
 
 United States v. American Trucking Associations,
 
 310 U.S. 534, 543, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345 (1940). “The cardinal principle of statutory construction is to save and not to destroy. It is our duty to give effect, if possible, to every clause and word of a statute, rather than to emasculate an entire section, as the Government’s interpretation requires.”
 
 United States v. Menasche,
 
 348 U.S. 528, 538-39, 75 S.Ct. 513, 519-20, 99 L.Ed. 615 (1955) (citations omitted);
 
 see also Sode v. United States,
 
 209 Ct.Cl. 180, 531 F.2d 531, 538 (1976).
 

 We therefore decline the invitation to ignore the statutory mandate of the notice requirement which, if accepted, would make the notice provision useless, inexplicable, inoperative, void, insignificant, meaningless, and superfluous. Simply put, it was the failure of the Air Force to give the notice required by law that was the cause of ineffectiveness of the election made by the claimants’ service member husbands.
 
 Cf. Cheeseman v. Office of Personnel Management,
 
 791 F.2d 138 (Fed.Cir.1986),
 
 cert. denied,
 
 — U.S. -, 107 S.Ct. 891, 93 L.Ed.2d 844 (1987) (misinformation supplied by government not shown to have caused civil service retiree’s election of annuity with no survivor benefit).
 

 Finally, the Claims Court was correct in holding that the AFBCMR findings that notices were sent to Ms. Kelly and Ms. McCarthy were not supported by substantial evidence in consideration of the fact that claimants’ probative evidence, sworn affidavits that notices were not received, was unrebutted. This distinguishes the present cases from those where there was no probative evidence to overcome the rebuttable presumption of administrative regularity.
 
 See Darsigny v. Office of Personnel Management,
 
 787 F.2d 1555 (Fed.Cir.1986);
 
 United States v. Hall,
 
 449 F.2d 1206 (5th Cir.1971),
 
 cert. denied,
 
 405 U.S. 957, 92 S.Ct. 1187, 31 L.Ed.2d 235 (1972). It is not enough for the appellant to rely on the presumption of official procedural regularity when there is contrary credible evidence presented to overcome the presumption or where the administrative action is arbitrary or capricious.
 
 Skinner v. United States,
 
 219 Ct.Cl. 322, 594 F.2d 824, 830 (1979).
 

 Appellant advanced an argument that the result reached by this court and the Claims Court poses a potential financial disaster for the government since there are many thousands of other spouses whose notification letters cannot be produced now and who may file claims. The Claims Court gave no weight to this argument and there is no evidence before us which supports that bare assertion. There has been no flood of litigation since the decision in
 
 Barber.
 
 Most surviving spouses appear, therefore, to have received their notices and we will not join the government in assuming that all or even many of those surviving spouses will commit perjury by giving a false, sworn affidavit that notice of their service member spouse’s election to opt out of the SBP was not received by them. Furthermore, this claim of potential prejudice was raised within the context of a laches defense, a defense rejected by the Claims Court and not raised in this appeal.
 

 CONCLUSION
 

 For the reasons stated above and in accordance with the controlling precedents mentioned, we affirm the Claims Court which, holding that it had jurisdiction, granted summary judgments to Ms. Kelly and Ms. McCarthy, subject to the offsets and with the record changes therein provided. The statute and regulation in issue created an unmistakable substantive right to a claim for money arising from failure of appellant to provide the notice required by law. The clear implication of the statute, as illustrated by its legislative history outlined in
 
 Barber v. United States,
 
 can lead to no other supportable legal conclusion.
 

 AFFIRMED.
 

 [1]
 

 . A companion case,
 
 Dean v. United States,
 
 10 Cl.Ct. 563 (1986), was decided earlier in the same month as the other two and with the same result on similar facts and legal issues. Final judgment in that case has not been entered pending resolution of the amount due. Since all three cases were decided by Judge Tidwell,
 
 Dean
 
 was cited as controlling in his opinions in the two cases on appeal and therefore is discussed in the briefs of the parties.
 

 [2]
 

 .
 
 Barber
 
 and
 
 Trone
 
 provided the basis for the decision of the Claims Court in
 
 Dean v. United States,
 
 10 Cl.Ct. 563 (1986).
 
 See supra
 
 footnote 1.