James W. BRUNDAGE

v.

The UNITED STATES.

No. 442–72.

United States Court of Claims.

Oct. 23, 1974.

Maurice F. Biddle, Sperryville, Va., attorney of record, for plaintiff. Thomas H. King, Washington, D. C., of counsel.

John W. Showalter, Washington, D. C., with whom was Asst. Atty. Gen. Carla A. Hills, for defendant. Raymond B. Benzinger, Washington, D. C., of counsel.

Before DURFEE, Senior Judge, and NICHOLS and KASHIWA, Judges.

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

DURFEE, Senior Judge:

Plaintiff served on active duty in the United States Air Force as a commissioned officer until he was discharged on March 31, 1969, as a result of having twice been passed over for promotion to the grade of permanent Major. By this action he asserts a claim for the pay of a Major with over fifteen years of service, to be computed from the date of his discharge. Plaintiff also prays for an order directing the Air Force to amend its records to show that he was promoted to permanent Major.

Plaintiff was chosen for promotion to the grade of temporary Major by a selection board (hereinafter "Temporary Major Board") which met on July 8, 1968. One month later, on August 5, 1968, another selection board (hereinafter "Permanent Major Board") was convened to consider the promotion of eligible officers. Plaintiff's records were considered by the Permanent Major Board, but he was not selected for promotion to permanent Major.

On October 11, 1968, prior to his discharge, plaintiff applied to the Air Force Board for the Correction of Military Records seeking to have expunged from his files the August 5, 1968 non-selection to the grade of permanent Major. It was plaintiff's contention that, due to administrative error, the permanent Major Board had not been apprised of his selection to the grade of temporary Major, one month earlier, by the Temporary Major Board. Plaintiff maintained that if the Permanent Board had been informed of this "significant factor," it would have in all probability promoted him to permanent Major. By letter of November 19, 1968, the Correction Board denied plaintiff's application for failure to establish a showing of probable error or injustice. Plaintiff's August 5, 1968 non-selection for promotion, coupled with a previous deferral of promotion on November 19, 1966, resulted in his discharge from the Air Force on March 31, 1969.

Plaintiff filed suit in this court on December 8, 1972. Thereafter, on January 26, 1973, he moved the court to suspend the proceedings to permit his reapplication to the Air Force Board for the Correction of Military Records. By letter of February 1, 1973, plaintiff requested the Correction Board to reconsider his case. He alleged, once again, that the records considered by the August 5, 1968 Permanent Major Board were incomplete in that they did not reflect his previous selection for promotion to temporary Major. Plaintiff's Officer Selection Brief, a document which was before the selection board, had been annotated with the printed word "SELECTED," under the column headed "PROMOTION STATUS," after the term "TEMP." According to plaintiff's theory, however, this entry was made by one Colonel Worthington, who was in charge of the Selection Board Secretariate, ·after the Permanent Major Board had made its selections, and thus

the Board was unaware of plaintiff's previous promotion to temporary Major.

On August 6, 1973, the Air Force Correction Board denied plaintiff's application for reconsideration. Plaintiff thereupon moved to lift the suspension of proceedings in this court, and he filed a supplemental pleading alleging, once again, that the action of the Air Force Correction Board in denying his application without a hearing was arbitrary and capricious.

The United States, in support of its motion for summary judgment, argues, *inter alia*, that plaintiff's claim for promotion to the rank of permanent Major is barred by the doctrine of laches, and it fails to state a claim upon which relief may be granted, and that the actions of the Air Force Board for the Correction of Military Records were not arbitrary or capricious.

Since it is our conclusion that plaintiff's claim is barred by laches, we shall not discuss or pass upon its merits.

 Laches is a "fairness" doctrine by which relief is denied to one who has unreasonably and inexcusably delayed in the assertion of a claim. Failure to act promptly will operate as a bar to recovery where the delay results in injury for prejudice to the adverse party. The doctrine of laches is based upon considerations of public policy, which require, for the peace of society, the discouragement of stale demands. It recognizes the need for speedy vindication or enforcement of rights, so that courts may arrive at safe conclusions as to the truth. As an equitable defense, laches is applied apart from, and irrespective of, statutes of limitations.

██ The doctrine of laches has long been given recognition and effect in this court.[1] Numerous Court of Claims cases have applied the bar of laches where plaintiffs have asserted demands for back pay or for reinstatement because of illegal discharge from civilian Federal service. *See e. g.*, Grisham v. United States, 183 Ct.Cl. 657, 392 F.2d 980, cert. denied, 393 U.S. 843, 89 S.Ct. 125, 21 L. Ed.2d 114 (1968); Jackson v. United States, 179 Ct.Cl. 29, cert. denied, 389 U.S. 985, 88 S.Ct. 468, 19 L.Ed.2d 478 (1967); Gersten v. United States, 364 F. 2d 850, 176 Ct.Cl. 633 (1966); Bovard v. United States, 160 Ct.Cl. 619, cert. denied, 374 U.S. 830, 83 S.Ct. 1872, 10 L. Ed.2d 1053 (1963); Alpert v. United States, 161 Ct.Cl. 810 (1963).

The judgment in a recent military pay case holding plaintiff's claim barred by laches, Cason v. United States, 461 F.2d 784, 198 Ct.Cl. 650 (1972) (hereinafter *Cason I*), was subsequently vacated at 471 F.2d 1225, 200 Ct.Cl. 424 (1973) (hereinafter *Cason II*). The decision in *Cason I* that plaintiff's claim was defeated by the doctrine of laches relied upon two old cases of this court, Plunkett v. United States, 58 Ct.Cl. 359 (1923), and Chamberlain v. United States, 66 Ct.Cl. 317 (1928), cert. denied, 279 U.S. 845, 49 S.Ct. 342, 73 L.Ed. 99 (1929), as authority for the proposition that the defense of laches was applicable to military, as distinguished from civilian, pay cases. On plaintiff's motion for reconsideration, the court held in *Cason II* that laches should not apply because defendant therein had made no attempt to substantiate that it was in any specific manner prejudiced by plaintiff's delay. In addition to this, the court considered decisive the unfairness to plaintiff of dismissal on the ground of laches in reliance on precedents which were obscure and more than 40 years old. "However," it was advised, "parties before this court in the future will take this case as notice that military pay cases are not *per se* exempt from application of the doctrine of laches." *Cason II*, 471 F.2d at 1229, *supra*, 200 Ct.Cl. at 431. The court further observed in *Cason II* that plaintiff's delay of four years before bringing suit was entirely too long, and that with a minimum showing of in-

---

1. It will be observed that laches is an affirmative defense to be pleaded under the Rules of this court. *See* Rule 37(b).

jury, it would have mandated application of laches except for the desuetude factor.

There can be no dispute after *Cason I* and *II* that the doctrine of laches is applicable to military pay suits.[2] This much plaintiff concedes. It is his contention, however, that neither of the constituents of laches, lack of diligence on plaintiff's part or resulting prejudice to defendant, is demonstrated by the facts of this case. We disagree.

A period of three years and eight months elapsed between plaintiff's discharge, at which time his claim accrued, (Mathis v. United States, 183 Ct.Cl. 145, 391 F.2d 938 (1968)), and the filing of suit herein. This and other courts have sustained the defense of laches for far shorter periods of delay in cases where civilians in government service have sought to challenge the legality of their removals. *See* authorities, with parenthetical delay periods indicated, cited in Alpert v. United States, *supra*, 161 Ct.Cl. at 820–821. A period of only eleven months delay was deemed sufficient to preclude plaintiff's recovery in Norris v. United States, 257 U.S. 77, 42 S.Ct. 9, 66 L.Ed. 136 (1921).

In *Cason II* the court indicated that certain differences between civilian and military pay cases must be taken into account when applying the principle of laches. One relevant difference revealed was that a civilian's administrative relief is mandatory, while military personnel have available only administrative remedies which are permissive in nature. Noting that the pursuit by a civilian employee of mandatory administrative remedies defers the running of both limitations and laches (citing Friedman v. United States, 310 F.2d 381, 159 Ct. Cl. 1 (1962), cert. denied, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963); Keeney v. United States, 150 Ct.Cl. 53 (1960)), but that the pursuit by military personnel of optional or permissive

administrative relief will not serve to defer or toll the running of limitations (citing Mathis v. United States, 391 F. 2d 938, 183 Ct.Cl. 145 (1968); Kirk v. United States, 164 Ct.Cl. 738 (1964)), the court in *Cason II*, 471 F.2d at 1229, *supra*, 200 Ct.Cl. at 432, opined:

> \* \* \* If, as our original opinion intimated, [permissive administrative remedies] do not suspend laches either, resort to them is discouraged, perhaps penalized. Yet they were created with the object of providing remedies less costly to both sides, and more expeditious than litigation is. The military should have a fair chance to correct their mistakes themselves. We think that in military cases it would be improper and erroneous for us to apply laches in a way that would spur the commencement of suit as soon as discharges become final, before the results of seeking administrative relief are known. \* \* \*

Plaintiff asks us to be mindful of the above-stated considerations, and he urges us to excuse his procrastination for a period of more than three years and eight months because during that time (1) he sought Congressional assistance to no avail, (2) he employed an attorney, who corresponded with the Air Force in an effort to obtain pertinent documentary material considered necessary for the prosecution of this case, and (3) he submitted an application for reconsideration to the Air Force Correction Board on February 1, 1973, after filing suit in this court.

■ The pronouncement by way of considered dictum in *Cason II*, 461 F.2d 784, *supra*, 198 Ct.Cl. at 432, that it would be improper and erroneous to apply laches in military pay cases so as to discourage resort to permissive administrative remedies, can give no consolation to plaintiff herein, for we fail to see how the enforcement of laches in the instant case would in any way have the ef-

2. *See* Bender v. United States, 201 Ct.Cl. 865, cert. denied, 414 U.S. 1022, 94 S.Ct. 444, 38 L.Ed.2d 312 (1973), (Order), a military pay case in which plaintiff's claim was dismissed on grounds of laches.

fect of inhibiting or deterring military personnel from pursuing optional administrative remedies. Plaintiff's first attempt to nullify his non-selection for promotion to permanent Major was by submission of an application, on October 11, 1968, to the Air Force Correction Board. That application was denied on November 19, 1968, before plaintiff was discharged from the service. Plaintiff had thereby availed himself of the opportunity to pursue administrative relief even before his claim in this action accrued. It was not until more than four years after the Correction Board's denial of plaintiff's application and not until after he filed suit in this court, that plaintiff again requested the Correction Board, on February 1, 1973, to reconsider his case.

■ Plaintiff tries to justify his tardiness, but his explanations fail to excuse either the protracted interval between applications to the Correction Board (a period of more than four years), or the delay in filing suit once his claim in this action accrued (a period of more than three years and eight months). The seeking of Congressional assistance is not a suitable sanction for delay; and, of course, an appeal for help to a member or members of Congress is not the pursuit of a permissive *administrative* remedy which the court in *Cason II,* 471 F.2d 1225, *supra,* 200 Ct.Cl. at 432, sought to encourage. The hiring of an attorney, who corresponded with the Air Force in an effort to obtain documents pertinent to the prosecution of this case, is likewise an insufficient ground or reason to justify plaintiff's lack of diligence. Even if this kind of activity could suffice as a warrant for delay, plaintiff's attempt to thereby establish diligence would nevertheless be utterly inadequate. He tells us that "it was not until August 16, 1971 that the Air Force released the requested material." But, as the Government points out, and as the record substantiates, plaintiff's request for this information to the Secretary of the Air Force was not

made until July 16, 1971, more than two years after his discharge. Having obtained the requested documents, plaintiff then waited another fifteen months before filing his petition in this action.

■ Plaintiff has established no extenuating circumstances sufficient to render his claim invulnerable to the defense of laches. We are compelled to the conclusion that he unreasonably and inexcusably delayed for a period of three years and eight months before asserting his rights in the commencement of this litigation. Of course, delay alone does not constitute laches. Some showing of prejudice by defendant should be made for it to prevail under the doctrine, although " * * * the longer the delay the less need there is to search for specific prejudice and the greater the shift to plaintiff of the task of demonstrating lack of prejudice. * * *." *Cason II,* 471 F.2d at 1229, *supra,* 200 Ct.Cl. at 431; *accord, Grisham,* 392 F.2d 980, *supra,* 183 Ct.Cl., at 663; *Gersten,* 364 F. 2d 850, *supra,* 176 Ct.Cl., at 636.

■ Prejudice to the Government manifestly results when a claimant for back pay unreasonably delays in the assertion of his rights, thereby obliging the Government to pay two salaries, over a long period of time, when it has received the services of only one person. This court has held, in numerous civilian pay cases, that such prejudice is sufficient for the enforcement of laches. *See e. g., Grisham, supra; Gersten, supra; Alpert, supra;* Albright v. United States, 161 Ct.Cl. 356 (1963); *Bovard, supra;* Miner v. United States, 143 Ct. Cl. 801 (1958); Dion v. United States, 137 Ct.Cl. 166 (1956). There appears to be no reason why the principle enunciated in these civilian pay cases should not be applied with equal force in military pay suits. *See Plunkett, supra; Chamberlain, supra.* It is reasonable to presume that another officer or officers have held plaintiff's position since he left the service, discharging the duties formerly performed by him, and drawing the salary plaintiff claims should

have been paid to him. *See* Blackmar v. United States, 354 F.2d 340, 347, 173 Ct.Cl. 1035, 1046 (1965); *Bovard, supra,* 160 Ct.Cl. at 622. However, even if no one was selected to replace plaintiff, or to perform the tasks that once were his, a recovery by plaintiff would require the Government to pay him the salary of a Major for a period of over five and a half years,[3] during which time no work was done, and during which time he had ample opportunity to fully assert his claim.

■ There is also some indication that the Government's defense has been impaired by the belated prosecution of plaintiff's claim. The search for truth is always imperiled with the passage of time. Memories fade and documentary evidence is sometimes lost or destroyed. Plaintiff's theory, which he fully expounded for the first time in his February 1, 1973 reapplication to the Correction Board was that the Permanent Major Board was unaware of his prior promotion to temporary Major, and that Colonel Worthington, in an effort to cover up an administrative error, annotated plaintiff's Officer Selection Brief subsequent to the selection board's consideration of that document. All of this, of course, is denied by the Government. By the time plaintiff reapplied to the Correction Board, Colonel Worthington was totally unable to recollect the specific facts surrounding plaintiff's case,[4] and plaintiff's scoring ballot, another document that was before the Permanent Major Board, had been routinely destroyed. Although this case is before us on the parties' cross motions for summary judgment to review the administrative record, plaintiff requested at oral argument the opportunity to go to trial for the resolution of what appears to be material issues of fact. The loss

of memory of Colonel Worthington and other witnesses, and the destruction of pertinent documentary evidence—both occasioned by plaintiff's delay—prejudices the Government by hindering its presentation of an effective defense. Defendant is now unable to establish with certitude, as perhaps it once could have, that the Permanent Major Board had been apprised of plaintiff's prior promotion to temporary Major.

Writing for the majority in *Cason I* Judge Nichols indicated a further policy consideration distinctly apposite in cases such as this, where plaintiff, after a long period of delay, challenges the procedural regularity of the actions of Government officials:

> * * * others have interests the court needs to consider, even though not parties nor represented by counsel. These are the officials whose procedures were allegedly defective. Their impartiality, competence, or devotion to law are impugned more or less, and they are subjected to some harassment that interrupts their performance of public duty. Some peace and serenity they must surrender as a price of being in public employment, but at least they are entitled to this: that they should be allowed to defend and explain their acts when their recollection is fresh and relevant evidence has not disappeared, for their own reputations as well as to protect the public fisc. [*Cason I, supra,* 461 F.2d at 788, 198 Ct.Cl. at 658.]

Plaintiff's allegations call into question the competence and veracity of Air Force officials. It is manifestly unfair to them, and disruptive of the orderly process of Air Force operations, to require them to explain and justify actions taken several years ago. Plaintiff waited until it was too late in the day for a

---

3. Plaintiff seeks active duty pay from his discharge date, March 31, 1969, until the date of judgment entered herein.

4. On July 11, 1972, plaintiff's counsel wrote to Colonel Worthington for information as to his involvement in annotating plaintiff's

Officer Selection Brief. In reply, by letter of July 17, 1972, Colonel Worthington stated: "As you must realize, it is almost impossible to recall such an event as you describe in your letter four years later." (Plaintiff's Exhibit 5).

speedy, fair and exact determination of the truth.

For these reasons, defendant's motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied. The petition is dismissed.