BENNETT, Senior Circuit Judge.
 

 Appellant Pepper appeals the decision of the United States Claims Court (Gibson, J.,
 
 *1572
 
 presiding) in
 
 Pepper v. United States,
 
 8 Cl.Ct. 666 (1985), finding Pepper’s claims for money damages (back pay and allowances arising from alleged wrongful active duty discharge) and reinstatement to the grade of major in the United States Air Force to be barred by the equitable doctrine of laches. We affirm.
 

 BACKGROUND
 

 We set forth here an overview of the pertinent agreed facts by paraphrasing the discussion thereof by the Claims Court.
 

 Appellant David S. Pepper entered the Air Force on active duty on February 10, 1965, at the grade of second lieutenant and • was thereafter progressively promoted to the permanent, regular grade of captain on February 10, 1972. Pepper subsequently failed five promotion board reviews for the grade of major. Three of those reviews, October 18, 1976, June 5, 1978, and June 4, 1979, resulted in Pepper’s nonselection to the grade of “temporary” major. Pepper was involuntarily discharged on February 29, 1980, pursuant to 10 U.S.C. § 8303 (1976 and Supp. IV) after having been twice passed over for promotion to the regular grade of permanent major on June 19, 1978, and July 9, 1979.
 

 On October 9, 1980, Pepper filed suit in the Court of Claims, contending that his discharge was the result of allegedly defective Officer Effectiveness Reports (OERs).
 
 [1]
 
 The alleged defects include allegations of procedural irregularities on the part of the rating officers, and the inherently prejudicial aspects of the Air Force officer rating procedure. Specifically, Pepper challenges the ratings he received during the time that Air Force Regulation 36-10 was in effect, from November 30,1974, to October 31, 1977.
 
 [2]
 
 Air Force Regulation 36-10 controlled the preparation and scoring of
 
 *1573
 
 Air Force Effectiveness Reports by limiting the number of officers of a given rank who could receive the highest rating (22%), the second highest rating (28%), and so on. During the period Regulation 36-10 was in effect, Pepper received three ratings, which placed him in the second, third, and second categories, respectively. Subsequent to this period, Pepper received an additional effectiveness rating prior to his discharge which placed him in the first category. His allegation below was that the less-than-perfect ratings, under what he considered an inherently unfair system, resulted in his passovers and discharge.
 

 Judicial proceedings were suspended in 1981 so that the parties might first seek a resolution of the case before the Air Force Board for Correction of Military Records. On March 8, 1984, the board denied relief to Pepper. The parties returned to the Claims Court, at which point the court heard arguments concerning the government’s contention that Pepper should have raised any challenge he might have to the allegedly defective OERs at the time they were rendered, and that his failure to do so barred him under the doctrine of laches.
 

 The Claims Court decided that Pepper was barred by laches, and specifically declined to address the merits of Pepper’s claims. Thus, the question before us is limited solely to the question of whether Pepper’s claims were barred by the doctrine of laches for inexcusable and prejudicial delay in asserting a claim from the date of the first challenged OER in 1974 to suit in 1980, as found by the Claims Court.
 

 OPINION
 

 In this circuit, two elements are necessary to establish the affirmative defense of laches: (1) inexcusable delay on the part of the claimant; and (2) prejudice to defendant as a result of such delay.
 
 Brundage v. United States,
 
 205 Ct.Cl. 502, 504 F.2d 1382, 1384 (1974),
 
 cert. denied,
 
 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975).
 
 Brundage
 
 also made it clear that the doctrine of laches can apply “apart and irrespective of” the court’s statute of limitations.
 
 Id. See also Pepper,
 
 8 Cl.Ct. at 671. Pepper of course appeals here the Claims Court’s finding that there had been both inexcusable delay and prejudice to the government resulting from that delay.
 

 1.
 
 Inexcusable Delay.
 

 We think that
 
 Adkins v. United States,
 
 228 Ct.Cl. 909 (1981), is dispositive in all respects in the case at bar, and that Pepper’s attempts to distinguish
 
 Adkins
 
 are totally ineffective. The Claims Court held here that the period of laches commenced with the issuance in 1974 of the first OER which gave Pepper less than a perfect score.
 
 Pepper,
 
 8 Cl.Ct. at 672. We think the Claims Court’s reasons for so holding are persuasive, but because we think
 
 Adkins
 
 disposes of the issue we do not address them individually.
 
 Adkins
 
 makes it clear that Pepper should have attempted to challenge any OER he considered defective at the time the OER was issued because he was on notice that he had a claim he could pursue administratively or by mandamus.
 
 Adkins,
 
 228 Ct.Cl. at 911. Pepper makes several arguments based on the premise that until his involuntary separation, he could not have been aware of the seriousness of receiving less than a perfect score.
 
 [3]
 
 Even if this were true,
 
 Adkins
 
 is clear that an OER must be challenged within a reasonable time after it is issued. More importantly, here, as in
 
 Adkins,
 
 Pepper was passed over for promotion several times prior to his final nonselection. At the very least, the first nonselection on October 18,
 
 *1574
 
 1976, should have put him on notice to act to correct any alleged errors in the OERs which might have contributed to his failure to be promoted.
 

 Pepper cites three cases which he argues show that the Claims Court has considered the claims of officers arising from defective OERs when there were delays in those cases equal to or greater than his own delay. In one of these cases,
 
 Hary v. United States,
 
 223 Ct.Cl. 10, 618 F.2d 704 (1980), the court did not mention the affirmative defense of laches and thus the case has no bearing on a case such as the one at bar in which the defense is raised. Similarly, in
 
 Horn v. United States,
 
 230 Ct.Cl. 18, 671 F.2d 1328 (1982), the defense of laches was not raised, although we note that
 
 Horn
 
 was also different from Pepper’s case in that timely challenges to each defective OER were made. The claim before the Claims Court in
 
 Horn
 
 was not to the defective OERs, instead the issue was that the selection board had improperly considered the expunged OERs. The suit in
 
 Horn
 
 was timely filed after the selection board’s decision was rendered.
 

 In the third case cited by Pepper,
 
 Riley v. United States,
 
 221 Ct.Cl. 308, 608 F.2d 441 (1979), the defense of laches was raised, and it was decided against the government. Riley received defective OERs in 1968 and 1969 and waited until immediately after his first nonselection to successfully challenge them by petitioning the Officer Personnel Records Review Board (OPRRB). While waiting for the Air Force Board for the Correction of Military Records to expunge his records of the defective OERs voided by the OPRRB, Riley was passed over a second time by a promotion selection board. The OERs were not before the final promotion board, but it was apprised of the fact that he had been passed over earlier. Riley immediately filed suit in the Claims Court to challenge the procedural irregularities inherent in expunging OERs but retaining records before a promotion board containing damaging information that resulted from the defective OERs.
 

 Thus, Riley’s case and Pepper’s are fundamentally different. Riley’s complaint before the Court of Claims was to the procedural irregularities in his promotion boards, and not to any deficiencies in the OERs themselves, which had been clearly voided. The 4-year delay in petitioning the OPRRB to have the OERs voided might well have been sufficient grounds for a defense of laches before that board, but once that board accepted and decided the challenge to the OERs, any subsequent timely appeals could not be subject to a defense of laches.
 

 Pepper never took any action with respect to his allegedly defective OERs for 6 years and some 4 years after first being passed over for promotion. None of these cases cited by Pepper aids his appeal and none assists him materially in distinguishing his case from
 
 Adkins.
 
 In view of
 
 Adkins,
 
 we cannot agree with Pepper that the Claims Court erred when it found his delay in bringing his claim to be inexcusable under the facts here.
 

 2.
 
 Prejudice to the Defendant.
 

 The Claims Court found that the United States had been prejudiced by Pepper’s inexcusable delay in at least two ways. First, the court found that delay alone, if it is long enough, can be sufficient prejudice. Second, the Claims Court found that the United States would be damaged monetarily by Pepper’s delay since, had his claim been timely raised and sustained, the award would have been less. While we agree with Pepper that the Claims Court may have impermissibly considered, in calculating the prospective damages, the time since his claim was filed in 1980, we do not agree that this entirely negates the court’s finding that the United States had been prejudiced by Pepper’s inexcusable delay.
 

 “The longer the delay by a plaintiff in filing suit, the less need there is to search
 
 *1575
 
 for specific prejudice and the greater the shift to plaintiff of demonstrating lack of prejudice.”
 
 Deering v. United States,
 
 223 Ct.Cl. 342, 620 F.2d 242, 246 (1980). If a plaintiff fails to meet this burden in a meaningful way, it may be presumed, in a proper case, that prejudice is manifest from undue delay.
 
 Wilmot v. United States,
 
 205 Ct.Cl. 666, 685 (1974). We said in
 
 Leinoffv. Milona & Sons,
 
 726 F.2d 734, 742 (Fed.Cir.1984), that a delay exceeding 6 years is presumptively injurious and therefore prejudicial. A delay under our precedents need not be that long but the key to these situations is to remember that laches is an equitable defense that aids the vigilant, not those who slumber on their rights, and it is designed to promote diligence and prevent enforcement of stale claims. The prejudice to be presumed from undue delay may include such problems as difficulty in finding witnesses and documents, difficulty in reviving fading memories, or, in some situations, the paying of two salaries for one position or the paying for services not performed.
 
 Adkins v. United States,
 
 228 Ct.Cl. at 912-13.
 

 We agree with the Claims Court when it says, on good authority, that prejudice exists in the present case because “[ejquity contemplates that [those .officials accused of creating the defective OERs] are entitled to defend and explain their acts when their recollections are fresh, and relevant evidence has not disappeared.”
 
 Pepper,
 
 8 CLCt. at 677. We also think this rationale extends to include the rights of the government in defending actions as well as to those of the individual officials.
 

 Appellant Pepper has failed to show that the Claims Court’s actions in granting summary judgment to the United States and denying appellant’s cross-motion were based on an erroneous interpretation of the law.
 

 AFFIRMED
 

 [1]
 

 . According to the Claims Court:
 

 An OER, or Officer Efficiency [sic] Report, is the Air Force form filled out pursuant to the Air Force Officer Evaluation Program. The information contained in this form is the primary, although not the exclusive, basis upon which officers are considered for promotion. During the period of plaintiff’s challenged OERs, one rating system was employed up to 1974, and another was in effect thereafter. The following description of the two programs is taken from the stipulation by the parties:
 

 Up to and including the time the September 1974 OER was rendered, the Air Force employed an OER rating system based upon a maximum score of 9-4. The first figure (ranging from 0-9) represented the evaluator’s assessment of the ratee’s duty performance; the second figure (ranging from 0-4) represented an assessment of potential for advancement within the ranks. In addition, the OER contained eight specific factors to be evaluated separately in rating overall performance. One of five verbal ratings, from best to worst, was ascribed to each factor. Finally, the OER provided space in which the evaluator was to offer a descriptive appraisal of the officer's talents and shortcomings.
 

 In late November, 1974, the Air Force instituted a new system of officer evaluation.
 

 The new system was designed to ensure that OER ratings reflected differences in the performance and potential of all Air Force officers by imposing strict quotas on the percentage of officers who could receive the highest scores. More than ninety percent of all Air Force officers ... were in a position whereby only twenty-two percent could receive the highest overall rating and only fifty percent could receive the highest or next-highest rating. The regulation prescribed that these quotas were to be enforced through various control points, specified as major commands or separate Air Force agencies.
 

 The revised OER form designed to implement this system listed ten performance factors, with five possible ratings in each. ... In place of the overall dual rating which characterized the 9-4 system, the new OER provided for a single overall rating to be ascribed in one of six unlabeled categories, ranging from highest to lowest. ... The new evaluation system relied upon two separate raters, along with a reviewer to assign overall ratings to each officer. In addition to these quantitative ratings, the revised OER contained space for written comments about the officer’s job performance and potential for advancement.
 

 Pepper,
 
 8 Cl.Ct. at 667-68 n. 2.
 

 [2]
 

 . As the Claims Court stated:
 

 Before the AFBCMR, plaintiff’s claim was based on a challenge to four OERs,
 
 i.e.,
 
 September 28, 1974; October 31, 1975; October 31, 1976; and October 31, 1977.
 
 See
 
 AFBCMR, Record of Proceedings, at 1. In his petition here, plaintiff challenged specifically by name only one OER,
 
 i.e.,
 
 the September 29 [sic], 1974 report.
 
 See
 
 plaintiffs petition at 2.
 
 *1573
 
 At oral argument, however, plaintiff conceded there was no longer a challenge to the September 28, 1974 OER, but that the 1975, 1976, and 1977 OERs were still in issue.
 

 See Pepper,
 
 8 Cl.Ct. at 667 n. 2.
 

 [3]
 

 . These arguments were also made before the Claims Court and were adequately addressed in Judge Gibson's opinion in
 
 Pepper,
 
 8 Cl.Ct. at 674-75.