**Terrence W. ALLIGOOD, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 660–81C.**

United States Claims Court.

Nov. 30, 1987.

Richard L. Swick, Washington, D.C., for plaintiff.

George M. Beasley, III, with whom were Asst. Attys. Gen. Richard K. Willard and David M. Cohen, Washington, D.C., for defendant. Lt. Col. William C. Kirk and Captain Mark Landes, Dept. of the Army, Washington, D.C., of counsel.

## OPINION

ERIC G. BRUGGINK, Judge.

Pending before the court in this review of a decision of the Army Board for Correction of Military Records ("ABCMR") are the parties' cross motions for summary judgment. After extensive briefing and oral argument, the court posed additional questions concerning the record and applicable law to the parties. They responded with a helpful joint stipulation and additional argument. After consideration of the submissions and the administrative record, the court concludes for the reasons explained herein that plaintiff is not entitled to relief, and that defendant's motion for summary judgment should be granted.

## I. BACKGROUND

Most of the background facts have been stipulated by the parties. The balance necessary to resolve the pending motions can be drawn from the record.

Terrence W. Alligood served in enlisted status as a member of the National Guard, not on full-time active duty from March 10, 1958 until January 16, 1960, and on active duty from January 17, 1960 until June 25, 1962. He enlisted in the United States Army on June 26, 1962, and served in enlisted status until June 15, 1964, when he completed Officer Candidate School. On June 16, 1964, Alligood was appointed as a Second Lieutenant in the Army of the United States ("AUS") as well as in the U.S. Army Reserve ("USAR"). He was promoted to the temporary grade of First Lieutenant (AUS) on December 17, 1965, and to the permanent (USAR) grade of First Lieutenant on July 16, 1966. Alligood was promoted to the temporary (AUS) grade of Captain on January 16, 1967 and to the permanent (USAR) grade of Captain on June 15, 1970.

Alligood was considered but not selected for promotion to the temporary (AUS) grade of Major by selection boards that adjourned on May 1, 1974 and June 24, 1975. On November 16, 1975, he was involuntarily released from active duty pursuant to Chapter 3, Army Regulation ("AR") No. 635–100. At the time of his discharge, Alligood had completed 16 years, 3 months, and 26 days of active military service.

The 1974 and 1975 temporary (AUS) selection boards contained no reserve officers. In 1975, Alligood, along with numerous other officers passed over by the 1974 and 1975 temporary Army selection boards, challenged his discharge before the ABCMR on the ground, among others, that the lack of reserve officers was a violation of 10 U.S.C. § 266 (1976).[1] The ABCMR held that the failure to include reservists caused an "injustice" to officers such as

Alligood. It recommended that new, appropriately constituted boards be convened to reconsider all officers who had been considered for promotion by the defective boards, that generally the same principles and practices be applied, and that the records of the officers be amended to appear as they were at the time the boards originally sat. The Secretary of the Army agreed. The Army Relook Board that adjourned on May 12, 1976 was directed to apply the criteria of the regularly constituted board that adjourned on May 1, 1974. The Relook Board considered, but did not select, Alligood for promotion to Major (AUS). Alligood was also considered, but not selected, by the Army Relook Board that adjourned on August 20, 1976 and that applied the criteria of the regularly constituted board that adjourned on June 24, 1975.

During that same period, Alligood was a member of the Promotion Research Committee, a group consisting of reserve officers who were turned down by the 1974 and 1975 temporary Army selection boards. Some members of the committee, but not Alligood, were named plaintiffs in law suits brought to challenge certain aspects of the actions taken by the Army in implementing the relook procedures. *Doyle v. United States*, 220 Ct.Cl. 285, 599 F.2d 984, *modified*, 220 Ct.Cl. 326, 609 F.2d 990 (1979), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980); *Bockoven v. Marsh*, 727 F.2d 1558 (Fed.Cir.), *cert. denied*, 469 U.S. 880, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984). The net result of these actions was that the Court of Claims and, subsequently, the Court of Appeals for the Federal Circuit ratified the use of Relook Boards as a remedy for the original defective boards. The Army was ordered, however, to treat the officers passed over as if they were in active duty status until either promoted or properly twice passed over. Other challenges—failure to consider officers in the "secondary zone," [2] and the assertions that

---

**1.** That section provides that whenever a board considers Reserve officers for promotion, such board "shall include an appropriate number of Reserves, as prescribed by the Secretary con-cerned under standards and policies prescribed by the Secretary of Defense."

**2.** The secondary zone consists of outstanding officers who have served less time in grade and

evidence of prior passover was considered and that an insufficient number of reservists were included—were rejected.

Although it is not clear from the record, apparently Alligood filed a second application with the ABCMR in 1976, challenging the results of the Relook Boards. His request for relief was denied on September 22, 1976.

After his discharge from active duty, Alligood remained in the Reserves. As a result of learning in April 1977 that he had been passed over for promotion to Major in the Reserves, Alligood asked for a copy of his Official Military Personnel File ("OMPF"). He also contemporaneously made an inquiry to the Reserve Components Personnel and Administration Center ("RCPAC")[3] concerning his records. His inquiry stated in part:

> Enclosed is a copy of orders sending me to CIC–0205 at Ft. Sill [the Communications and Electronics Staff Officer Course plaintiff attended in 1975], a copy of orders showing I graduated and sending me to Ft. Hood, a copy of my diploma and a copy of my DD–214 [DD Form 214, Certificate of Discharge]. I hope that this solves the promotion problem. You people have lost all my records and I'm quite upset because you are interfering with my career. I would like a return as to when you find my records.

Alligood filed suit in this court on November 10, 1981. His petition asserts that the actions of the 1976 AUS Relook Boards were arbitrary and capricious and in violation of 10 U.S.C. § 266 in that: the Relook Boards did not have the full number of promotion slots initially allocated to the 1974 and 1975 boards; the record reflected his passover in 1974 and 1975; the record considered by the Relook Boards was incomplete (Alligood's Academic Report for the Infantry Officers Advanced Course ("IOAC") completed in 1971 was allegedly missing from his OMPF); the Relook Boards were improperly constituted in that they included members from the earlier Boards; and Alligood was not afforded advance notice of the pending Relook Boards. Proceedings were suspended on January 21, 1983, at Alligood's request, to permit adjudication by the ABCMR. In turn, the ABCMR suspended adjudication of the application until the decision in *Bockoven*, 727 F.2d 1558, was final.

On March 6, 1985, the ABCMR (the "1985 ABCMR") determined that plaintiff's records should be corrected to provide that he was discharged on February 28, 1977 instead of November 16, 1975 based on the earlier cancellation of the promotion boards that initially considered plaintiff for selection to Major in 1974 and 1975. His request for relief was otherwise rejected. With respect to Alligood's argument that his record was incomplete, the ABCMR held that "based on the evidence now available, the regular 1974 and 1975 promotion boards and the 1976 reconstituted boards had sufficient records and/or information before them to show that the applicant completed the IOAC in 1971."

On March 20, 1985, plaintiff requested reconsideration of this determination based upon his contention that he had in excess of 18 years active federal service and was thus entitled to complete 20 years of service under the sanctuary provisions of 10 U.S.C. § 1163(d) (1982).[4] On July 2, 1986, the ABCMR denied the reconsideration request.

---

are generally younger than officers in the primary zone. Passover of an officer in the secondary zone does not mandate automatic release from active duty. In 1974 and 1975, officers from the secondary zone were considered. The Relook Boards did not consider such possible promotions.

3. From at least May 20, 1971, through February 1, 1981, the U.S. Army Military Personnel Center (MILPERCEN), Alexandria, Virginia, was the custodian of official military personnel files of commissioned officers serving on active duty.

During the same time, the RCPAC was the official custodian of records for commissioned officers (except general officers) in a Reserve status not on active duty.

4. That section provides that a "member of a reserve component who is on active duty and is within two years of becoming eligible for retired pay ... may not be involuntarily released from that duty before he becomes eligible for that pay, unless his release is approved by the Secretary."

## II. THE PARTIES' CONTENTIONS

Although the complaint raises a number of arguments, Alligood's motion for summary judgment advances only one basis for reversal: that his consideration for promotion was based on a record that was not substantially complete and fair. That the other grounds for reversal are no longer being advanced was made clear by plaintiff's counsel at oral argument: "[t]he case before the Court presents a very narrow question. That is, [the correctness of] the decision of the [ABCMR] that the Plaintiff's records contain sufficient evidence of the academic report reflecting his completion of the infantry officers advance course." Transcript at 2–3.[5] There is one evidentiary respect in which Alligood's current position goes beyond what was asserted either in the complaint or before the 1985 ABCMR. Alligood presently asserts[6] that certain markings appearing on the copy of the IOAC Academic Report that was before the ABCMR in 1985 tend to indicate that this copy was, in actuality, the copy Alligood sent to the RCPAC in 1977. Consequently, it could not have been in the records that were before the 1976 Relook Boards.

With respect to the merits of Alligood's appeal, defendant contends that either the Academic Report of August 5, 1971 reflecting completion of the course was part of the 1976 file, or else there was sufficient other information in Alligood's OMPF to permit the same conclusion. Defendant thus argues that the ABCMR decision is based on substantial evidence. Before addressing that issue, however, the court must first consider whether, as defendant urges, Alligood is barred by laches from pursuing his claim.

### III. LACHES

■ Laches is a doctrine applicable to military pay claims in this court. *Sargis-*

son v. United States, 12 Cl.Ct. 539 (1987); *Watson v. United States*, 12 Cl.Ct. 502 (1987); *Birdwell v. United States*, 11 Cl.Ct. 862 (1987); see *Deering v. United States*, 223 Ct.Cl. 342, 346, 620 F.2d 242, 244 (1980); *Cason v. United States*, 200 Ct.Cl. 424, 471 F.2d 1225 (1973). The rationale behind application of the doctrine was explained in *Brundage v. United States*, 205 Ct.Cl. 502, 505–06, 504 F.2d 1382, 1384 (1974), *cert. denied*, 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975):

Laches is a "fairness" doctrine by which relief is denied to one who has unreasonably and inexcusably delayed in the assertion of a claim. Failure to act promptly will operate as a bar to recovery where the delay results in injury or prejudice to the adverse party. The doctrine of laches is based upon considerations of public policy, which require, for the peace of society, the discouragement of stale demands. It recognizes the need for speedy vindication or enforcement of rights, so that the courts may arrive at safe conclusions as to the truth.

■ The doctrine is an affirmative defense applied irrespective of the statute of limitations, *Pepper v. United States*, 794 F.2d 1571, 1573 (Fed.Cir.1986), and requires defendant to show lack of diligence by the serviceman in asserting a claim, and prejudice to itself. While the burden of establishing the defense is on the Government, *Costello v. United States*, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961), our predecessor court and the Court of Appeals for the Federal Circuit have made clear that in establishing the second element—prejudice—the longer the delay, the less need there is to search for specific prejudice. *Pepper*, 794 F.2d at 1574–75; *Deering*, 223 Ct.Cl. at 350, 620 F.2d at 246. As stated in *Pepper*, "The prejudice to be presumed from undue delay may include such problems as difficulty in finding witnesses and

---

**5.** Plaintiff's counsel offered the view that the other grounds for relief are controlled by *Bockoven*. The court agrees that *Doyle* and *Bockoven* are fatal to the other arguments in the complaint. To the extent they have not been waived, therefore, relief is denied on the other grounds stated in the complaint.

**6.** Defendant objects to any consideration of this and other assertions newly made in Alligood's affidavit of January 5, 1987. See discussion at pp. 15–16.

documents, difficulty in reviving fading memories, or, in some situations, the paying of two salaries for one position or the paying for services not performed." 794 F.2d at 1575 (citing *Adkins v. United States*, 228 Ct.Cl. 909, 912–13 (1981)). More recently, the Federal Circuit has instructed that "[w]here the length of the delay is clearly unreasonable, however, the burden of going forward with evidence to justify the delay shifts to the party who delayed." *Cornetta v. United States*, 831 F.2d 1039, 1041 (Fed.Cir.1987).

In the present case, Alligood was first released from active duty in November 1975. He promptly challenged his discharge and, as discussed above, was successful. The result of his 1975 and 1976 ABCMR challenges (as affected by *Bockoven* and the 1985 ABCMR review) was that his discharge date was corrected to reflect discharge on February 28, 1977. The court notes initially that it will not consider the period between the original and revised discharge dates as counting toward an asserted financial prejudice to defendant. Although back pay for that period has not been paid, Alligood is entitled to that relief regardless of the outcome here.

■ The period for which the laches defense may be asserted is not necessarily coextensive with the statute of limitations period. Although the limitations period starts to run at the time of discharge, a plaintiff may be charged with periods of inexcusable delay even though such periods occurred prior to accrual of the cause of action. *Adkins v. United States*, 228 Ct.Cl. 909, 911 (1981); *Deering*, 223 Ct.Cl. at 351 n. 3, 620 F.2d at 246 n. 3. The significant question becomes, therefore, when did Alligood first have reason to be aware of the presently-asserted basis for challenging the 1976 Relook Boards, namely, the alleged absence from his OMPF of the IOAC Academic Report?

■ By his own admission, Alligood became aware of the possibility of the Academic Report omission no later than the summer of 1977. He recites in his affida-

vit [7] that when he was passed over for the reserve promotion, a "short time" after April 4, 1977 he

> telephoned the Reserve Components Personnel and Administration Center in St. Louis, Missouri, and was informed that the reason for my non-selection was that I had not completed the mandatory military educational requirement for promotion to Major, specifically a branch advanced course. I was extremely upset because I had completed the Infantry Officers Advanced Course in 1971. I immediately sent a copy of the Academic Report showing my completion of the Infantry Officer's Advanced Course. At the time, I contacted Senator Harrison Schmitt's office. Through the help of Senator Schmitt's office, my Official Military Personnel File (OMPF) was eventually completed and I was promoted. Colonel Wallace W. Noll's letter of November 1, 1977, to Senator Schmitt concedes that my OMPF did not reflect that I had completed the "military educational requirements." The only "military educational requirements" for promotion to Major in the USAR is a branch (i.e. Infantry, Artillery, Armor, etc.) Advanced Course. CIC–0205 is not a military educational requirement. Therefore, Colonel Noll could only have been referring to the failure of my records to contain proof I had completed the Infantry Officers Advanced Course.

> 9. After learning of my non-selection, I also requested a complete copy of my OMPF. Upon review, I also noted that the CIC–0205 documents were missing.

Alligood was of course entitled to check his OMPF at any time. AR No. 640–10, ¶ 1–15 (1973). He could have done so after his first regular Army passover in 1974. Presumably he would have noticed then whether the IOAC Academic Record was missing. In any event, there is no question that Alligood was not diligent in pursuing his administrative remedy in the summer of 1977. Taking his affidavit and his litigating position here at face value, Alligood knew in 1977 that his records did not con-

---

7. *See infra* note 12.

tain the Academic Report. At that time he had every reason to suspect that the same omission which he says prejudiced his reserve promotion could have affected his 1976 Relook Board considerations. This would have been confirmed upon his receipt of his OMPF.

A four and a half year period of delay gives Alligood the benefit of the doubt. In fact, the delay was longer. Normally the filing of an appeal will toll not only the limitations period, but also laches. Alligood would not have assessed against him the period this action has been pending here and during the most recent consideration by the ABCMR. *See Pepper*, 794 F.2d at 1574; *Brundage*, 205 Ct.Cl. at 507–09, 504 F.2d at 1385–86. In that respect this action is similar to *Brundage*, where the plaintiff had unsuccessfully challenged his passover to the correction board, delayed for approximately four years, filed suit in the Court of Claims, and then sought suspension during a second consideration by the correction board. Apparently, the court considered only the period between the first correction board decision and the commencement of the Court of Claims suit, and on the basis of a showing of prejudice by defendant, it found the laches defense applicable.

In this case, however, Alligood did not fully present his evidence with regard to whether the Academic Report was in his records until January 16, 1987—in response to defendant's cross motion for summary judgment. Only then did he allege by affidavit that markings on the present OMPF copy of the report suggest that it came from his own files, and thus was absent prior to the summer of 1977.

In any event, the four and a half year delay in this case is clearly within the range of time periods found to constitute laches in other cases involving government employees. *E.g., Norris v. United States*, 257 U.S. 77, 42 S.Ct. 9, 66 L.Ed. 136 (1921)

(eleven months); *Beeny v. United States*, 218 Ct.Cl. 672, 590 F.2d 343 (1978) (more than four years between discharge and suit); *Bell v. United States*, 207 Ct.Cl. 1021 (1975) (more than three years); *Brundage v. United States*, 205 Ct.Cl. 502, 504 F.2d 1382 (1974) (three years and eight months from date of discharge), *cert. denied*, 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975); *Alpert v. United States*, 161 Ct.Cl. 810 (1963) (more than three year delay); *Fleming v. United States*, 2 Cl.Ct. 111 (1983) (less than one year between discharge and suit).

Plaintiff has made no effort to provide a rationale for the four and a half year hiatus between summer 1977 and November 1981, when this action was commenced.[8] The first element of laches—lack of diligence—thus is present. The court assumes that the four and a half year delay here is not so great, however, that prejudice can be presumed. Nevertheless, the court finds that two types of prejudice are present.

*Monetary Prejudice*

In support of its claim of monetary prejudice, defendant asserts, and Alligood concurs,[9] that his gross pay and allowances for the period from March 1, 1977 to August 1, 1979, when he would have become eligible for active duty retirement, is $66,624.13. Against this amount, Alligood presents evidence of income during the period January 1977 through December 1979 of approximately $58,000. Even discounting this amount for the first few months of 1977, Alligood would be entitled to little if any back pay, particularly if the $15,000 in severance pay received by Alligood is considered. *See Cason v. United States*, 200 Ct.Cl. 424, 431, 471 F.2d 1225, 1229 (1973).

Defendant's primary effort to show monetary prejudice is with respect to increased retirement benefits. Such an argument was accepted by this court in *Jones v.*

---

8. In his affidavit, Alligood gives an explanation for delay in asserting arguments based on composition of the promotion boards. That rationale is off the mark with respect to the only basis for relief presently asserted—the incompleteness of his record.

9. In his petition, Alligood asks, among other things, for a judgment for the amount of pay of a Captain from November 16, 1975 until April 1, 1981, and for retirement pay of a Captain from April 2, 1981 until the date of judgment.

*United States,* 6 Cl.Ct. 531, 535 (1984), and most recently by the Court of Appeals for the Federal Circuit in *Cornetta,* 831 F.2d 1039, at 1043:

> Even if retirement pay is regarded as current compensation, the government would nonetheless be subject to economic detriments related to military retirement as a consequence of a decision favorable to Cornetta. Clearly, the years of service credited to him would permit retirement at an earlier age, at a higher rate of pay, and with fewer years of actual active duty service. A favorable decision would also likely increase the overall governmental costs because another officer presumably would be accruing similar benefits for performing the work for which Cornetta would receive credit.

The circumstances here are analogous to those in *Cornetta* in that a decision favorable to Alligood would give him active duty retirement in 1979 based in part on two years of constructive service. Plaintiff argues that the amount of his active duty retirement pay, assuming he were successful, would be the same regardless of when he filed suit. That response misses the point of *Cornetta,* however, which is that defendant is prejudiced by retirement eligibility based on fewer than twenty years actual service and by some other officer's earning retirement eligibility during those two years for doing work Alligood should have done. The delay prejudice thus relates to the period from 1977 to 1979.

This court is obligated to apply the analysis in *Cornetta.* The only significant point of distinction with respect to "retirement pay" prejudice concerns the amount of time involved. In *Cornetta,* the serviceman was asking in effect for four years constructive service. In the case at bar, because the period between the original and revised discharge dates cannot be charged against Alligood, the comparable period is approximately two and one-half years (February 28, 1977, the corrected discharge date, to August 1, 1979, his retirement eligibility date assuming active service).

In order to amplify its argument, defendant has submitted affidavits demonstrating that if Alligood had retired from active service on August 1, 1979, he would, assuming certain variables, have received over his life expectancy $1,877,000 in gross retirement pay. This amount has a present value of $508,000. If, on the other hand, he receives no relief, his gross reserve retirement, payable upon reaching age 60 in 2001, would be $1,710,000 during his projected life expectancy. The present value of that benefit is $211,000. Defendant points to the $297,000 difference in present values as direct evidence of monetary prejudice relevant to laches.

The court declines to simply apply the $297,000 difference in retirement benefits in its laches analysis, however. The court recognizes that most defendants would, if liable for an amount, choose to pay it later rather than sooner. And the greater the amount of liability, the more "prejudiced" they would be in paying it. To state the principle in its broadest terms, a defendant would consider itself prejudiced in paying anything. If that is what is meant by financial prejudice, then litigants who are seriously damaged are at the greatest disadvantage in meeting a laches claim. That of course is not what the defense envisions. To be applicable as a laches factor, the increasing financial prejudice must be due to *inexcusable delay,* not to the degree of success on the merits of the serviceman's claim. *See Pepper,* 794 F.2d at 1574; *Brundage,* 205 Ct.Cl. at 510, 504 F.2d at 1386–87; *Deering,* 223 Ct.Cl. at 350, 620 F.2d at 246.

The court thus views the data furnished by defendant merely as factual support for the analysis in *Cornetta* that when someone receives active duty retirement without full active duty service, the defendant is paying an improved benefit to someone who has not given full service for it. In sum, defendant has shown a degree of financial prejudice. Whether by itself it would be sufficient to meet defendant's burden of proving prejudice is not an issue, however, due to the presence of evidentiary prejudice.

*Evidentiary Prejudice*

■ In *Pepper*, the Federal Circuit indicated that among the problems that can be presumed from undue delay are difficulty in finding witnesses and documents and difficulty in reviving fading memories. 794 F.2d at 1575. Those problems become acute in a case such as the one at bar, when the entire basis for Alligood's claim is a single allegedly missing document. Although the court is not considering the period between the original and revised discharge dates as a factor in terms of monetary prejudice or as inexcusable delay, there is no escaping the fact that over five years elapsed between the decision of the Relook Boards and commencement of this suit, and eight years passed until Alligood asserted on summary judgment what he should have known in 1977—that markings on his personal copy of the Academic Record are present on the OMPF copy. The time to raise such peculiarly fact-intensive questions was in 1977. As discussed later, after grappling with the undisputed facts, and even assuming defendant's latest assertions, the court concludes that the question of whether the Academic Report was in the Relook Boards' files in 1976 cannot be answered with certainty. Whatever hope there was in 1977 of tapping the recollections of reviewers, and of persons associated with the reserve promotion file deficiencies,[10] the court takes notice of the fact that passage of four and a half years significantly deteriorated those recollections.

Under these circumstances the court concludes that evidentiary prejudice exists. Based on the financial prejudice previously discussed, and the effect of totally unexcused delay on issues of proof, the court

10. In this regard, the court has not considered the Noll affidavit of November 7, 1986 submitted by defendant.

11. During oral argument, the court asked plaintiff's counsel if the only decision for the court's review is the 1985 ABCMR decision, rather than the earlier decisions or the 1986 decision regarding time in active service. The following colloquy occurred:

THE COURT: [I]t is the 1985 ABCMR decision that I am reviewing, I guess, isn't it?

concludes that Alligood's claim is barred by laches.

Although not necessary to the result, the court proceeds to address the merits of plaintiff's claim, in part, to form a background for its finding of evidentiary prejudice.

## IV. REVIEW OF THE 1985 ABCMR DECISION

Under applicable case law, the precise issue before the court is whether the 1985 [11] decision of the ABCMR with respect to completeness of the record considered by the promotion boards is arbitrary, capricious, unsupported by substantial evidence, or contrary to law, regulation, or mandatory procedure. *Sanders v. United States,* 219 Ct.Cl. 285, 298, 594 F.2d 804, 811 (1979). In meeting what the *Sanders* court referred to as a "difficult standard of proof," the serviceman must present "cogent and clearly convincing evidence." *Dorl v. United States,* 200 Ct.Cl. 626, 633, cert. denied, 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973).

The controversy over the completeness of Alligood's record concerns whether the 1976 Relook Boards knew that plaintiff had completed the IOAC. There is no question that Alligood successfully completed the ten-month course in August 1971. Moreover, while the parties have stipulated that there is no regulatory requirement for completion of an advanced course prior to promotion to Major (AUS) on active duty, defendant has not attempted to dispute the premise underlying Alligood's claim: that he would have been prejudiced if the Relook Board did not have knowledge of his completion of the IOAC.

MR. SWICK: That is correct, Your Honor.
THE COURT: The '86 one is on a narrow issue which I assume I am not really supposed to address.
MR. SWICK: We are not really pressing that issue here, Your Honor.
Transcript at 4. The court thus treats the question of whether Alligood is entitled to the sanctuary provisions of 10 U.S.C. § 1163(d) as waived.

In addition, defendant has stipulated that AR 640–10 requires that the Academic Report reflecting completion of the IOAC course be in Alligood's OMPF. The Academic Report in question is presently in Alligood's OMPF. It reflects that he successfully completed the course, graduated somewhere below the 80th percentile, rated "average" in three specific rating categories, and scored 326 out of a possible 500 points on the exam.

The 1985 ABCMR concluded that "based on the evidence now available, the regular 1974 and 1975 promotion boards and the 1976 reconstituted boards had sufficient records and/or information before them to show that the applicant completed the IOAC in 1971." In reaching this conclusion, it recites:

> A review of the applicant's official military personnel file reveals numerous documents indicating that he had completed the IOAC. These documents, include, but are not limited to, a 5 August 1971 academic report showing the applicant as an honor graduate of the IOAC; two Officer Efficiency Reports for the period 5 August 1971—29 June 1972 and 30 June 1972—26 November 1972, showing under Part II Schooling, Potential, Highest Military School Completed, "IOAC", and an Officer Record Brief, dated May 1975, showing completion of the advanced course in 1971.

The ABCMR thus makes a finding that the 1976 boards had available the IOAC Academic Report in issue. Alligood argues that this finding is incorrect, and that the report presently in his OMPF was actually furnished in response to his 1977 passover for promotion to Major (USAR). Alligood states that he furnished a copy of the report in 1977, along with other materials, and was promptly given a Reserve promotion to Major.

**A. Was the Academic Report Before the 1976 Relook Boards?**

█ In considering this question, the court is confronted at the outset with a discrepancy between the argument advanced to the 1985 ABCMR and the argu-

ments advanced here. This court's review is not *de novo*. It is based on the record and argument made to the ABCMR. *See Krzeminski v. United States*, 131 Cl.Ct. 430, 436–437 (1987). As a corollary, evidence and argument not presented to the corrections board may not now be considered, absent a showing that the evidence was unavailable below. *See Doyle v. United States*, 220 Ct.Cl. at 311–12, 599 F.2d at 1000–01 (1979); *Haynes v. United States*, 190 Ct.Cl. 9, 12–13, 418 F.2d 1380, 1382–83 (1969); *Long v. United States*, 148 Ct.Cl. 4, 9 (1960); *Long v. United States*, 12 Cl.Ct. 174, 176 (1987). A comparison of Alligood's current argument with the documents given to the ABCMR shows that his presentation as to the omission of the Academic Report in 1976 was based solely on general assertions and six pieces of correspondence, none of which contain the following information presented in Alligood's recently-submitted affidavit:

1. Alligood telephoned the RCPAC in April or May 1977, at which time he learned that the reason for his nonselection to Major (USAR) was the fact that he had not completed the military education requirement (the IOAC).

2. Immediately after the April/May 1977 telephone call, Alligood sent the RCPAC a copy of the Academic Report showing his completion of the IOAC.

3. Certain markings appearing on the copy of the IOAC Academic Report that was before the ABCMR in 1985 tend to indicate that this copy was, in actuality, the copy Alligood sent to the RCPAC in 1977. Consequently, it could not have been in the records that were before the 1976 Relook Boards.

Under these circumstances, it is understandable that the ABCMR concluded that the Academic Report was present in 1976. Assuming either that it had been present all along, or that Alligood furnished it in 1977, it was no doubt among the materials before the 1985 ABCMR. Regardless of argument about unspecified "military educational requirements" missing with respect to the 1977 reserve promotion, the ABCMR therefore had a substantial basis

for its finding that the report was present in 1976. Alligood's considerably more detailed argument after the decision comes too late.[12] Alligood has provided no explanation for why this evidence could not have been furnished earlier. *See supra* note 8. Indeed the burden is on Alligood to show that this new evidence could not, despite due diligence, be presented to the ABCMR. *Long*, 12 Cl.Ct. at 176. The reasoning relied on by the court in finding laches applicable applies here. By his own admission, Alligood had knowledge of the facts contained in numbered paragraphs 1 and 2 above in 1983 when he went to the ABCMR; he also knew them in 1977. With respect to the third numbered paragraph, the information concerning the markings on the file copy of the Academic Report was clearly available to Alligood before 1983. He could have asked to see his OMPF at any time. While Alligood contends that he is entitled to rely on a presumption that the military maintains proper and updated personnel records, the primary thrust of his argument to the ABCMR in 1983 was that he believed that presumption to be incorrect in his case. A critical question posed by Alligood's appeal was whether the 1976 Relook Boards had his Academic Report before them. In view of his assertion that he had sent in a copy of his Academic Report in 1977, it is incomprehensible why Alligood did not specifically explain to the ABCMR that the file copy they would encounter in their review was the copy he had furnished. Based on his argument and affidavit, Alligood had every reason between 1977 and 1983 to be concerned about the condition of his OMPF. Having access to review his records pursuant to AR 640–10, ¶ 1–15, his failure to discover the similarity of markings is due

to lack of diligence. Accordingly, Alligood's new allegations will not be considered. It is not necessary to second-guess the ABCMR decision, therefore, because based on the record and argument presented to it, there was substantial support for its conclusion.

B. Assuming Omission of the Report, Must the ABCMR Decision Be Reversed?

Even assuming that the court were to consider Alligood's new argument, and assuming that this argument was clear and convincing proof that the ABCMR finding with regard to the Academic Report was wrong,[13] the result does not change. As discussed below, there is sufficient additional evidence to support its ultimate holding that the record was complete.

Case law considering the effect of omissions makes it clear that the "selection procedure must follow the law. The documents which are sent to a Selection Board for its consideration therefore must be substantially complete, and must fairly portray the officer's record." *Weiss v. United States*, 187 Ct.Cl. 1, 7, 408 F.2d 416, 419 (1969). In *Yee v. United States*, 206 Ct.Cl. 388, 512 F.2d 1383 (1975), the court emphasized that the omission of materials from the OMPF can be equally prejudicial as the inclusion of negative comments.

Moreover, the Court of Claims has clearly rejected the idea that a serviceman must show that "but for" an error in composition of his records he would have been promoted. *See Sanders v. United States*, 219 Ct.Cl. 285, 307, 594 F.2d 804, 816 (1979). Contrary to Alligood's argument, however, it is not every omission of records that so

---

12. The court considers it entirely appropriate to disregard new allegations in the affidavit in its substantive review, and yet take Alligood's affidavit and argument into account in evaluating the laches issue. Laches implicates the entire case pending before this court. In its substantive review, the court evaluates the ABCMR decision in light of the record present before the board.

13. While the court acknowledges that there is circumstantial evidence that the Academic Report was not present in 1976 and that its ab-

sence was prejudicial, Alligood's evidence falls short of the necessary clear and convincing proof of either basis of his claim. As discussed in *Brooks v. United States*, 213 Ct.Cl. 115 (1977), where the court grappled with an allegation that an OER was missing from the plaintiff's OMPF, there is a "strong presumption that military boards perform their duties correctly, fairly, and in accordance with law and governing regulations, and the burden is on plaintiff to prove otherwise." *Id.* at 121.

taints the selection process as to render the nonselection a reversible error. *Guy v. United States*, 221 Ct.Cl. 427, 436, 608 F.2d 867, 872 (1979). The omission must be substantial and prejudicial. *See Skinner v. United States*, 219 Ct.Cl. 322, 329, 594 F.2d 824, 828 (1979).

■ After a careful review of the submissions and the record before the ABCMR, the court finds that even if the Academic Report was not included in 1976, the violation is not substantial and prejudicial. In reaching this result, the court in effect also finds that the ABCMR's ultimate conclusion—that the Relook Boards had sufficient records and/or information to show completion of the IOAC—is based on substantial evidence.

The ABCMR points to three documents other than the Academic Report that indisputably were within Alligood's OMPF and that reflect his completion of the IOAC: the OER for August 5, 1971 through June 29, 1972; the OER for June 30, 1972 through November 26, 1972; and an Officer Record Brief dated May 1975.

The OER's are two-page documents. On the second page of both OER's there are two direct references to the IOAC. Under "PART IX—SCHOOLING POTENTIAL" the following appears as the first item: "IOAC—Highest Military School Completed." Furthermore, the 1971–1972 OER has the following comment by the indorser: "CPT Alligood has had a unique assignment in that he has commanded a company consisting primarily of Captains and Majors enrolled in the Infantry Officers Advanced Course." The November 1972 OER had the same indication of IOAC completion, but on that report the rater states, "CPT Alligood consistently utilized foresightedness in preparing to receive incoming officers assigned to the Infantry Officer Advanced Course."

During oral argument the court asked plaintiff's counsel the following: "So, your reliance on this is to show that someone looking at the file wouldn't have drawn the conclusion that he had the course based on what was in the file?" Counsel responded, "Well, they may have been able to infer it if they studied the documents. I think they could, because there [were] places where they could get it, but ... documents being what they were, unless the academic report is in there, they don't know for sure." Transcript at 23. The court finds that concern to be implausible. The notations concerning the IOAC in Alligood's OER's are not of a type that can be made inadvertently. Moreover, on both OER's, below the indication of IOAC completion, is a box in which Alligood is recommended for schooling in "CGSC or equivalent with contemporaries." Alligood's counsel stated at oral argument that "somebody looking at that on a Promotion Board could say, well, they wouldn't be sending him to that school [CGSC] if he hadn't completed the advanced course." Transcript at 25.

Finally, the ABCMR points to the Office Record Brief of May 1975 which lists under Military Education, "INF OFF ADV 71." Such a notation could clearly not be inadvertent.

In light of these numerous unequivocal references, the court finds that there was substantial evidence to support the ABCMR's conclusion. Even if the Academic Report was missing in 1976, the fact of completion of the IOAC was manifest from the record.[14] Any omission of the report itself was therefore not a substantial or prejudicial violation of regulations. The relevant information in question was present, albeit in a different form than required.

Alligood contends that it makes no difference that a selection board could have inferred from other records that he completed the IOAC, arguing that "What could have been is conjecture." The court is not applying the "but for" test in its analysis, however. It requires no conjecture to find that the fact of Alligood's completion of the IOAC was clear in the record. The material information was never missing from the

---

14. Alligood has not argued that the possible omission of ratings or scores that are contained only in the one-page Academic Report was prej-udicial. Alligood has confined himself to alleging that lack of proof of completion had a prejudicial effect.

file. As a corollary, the regulatory violation was not substantial or prejudicial.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. The Clerk is directed to dismiss the complaint. Each side is to bear its own costs.

It is so ORDERED.

